NOAH TUTTLE, Appellant, v. WILLIAM D. WOOD et al.

**Domicile:**  EVIDENCE:  *Presumption of death.* Evidence that a person had transacted business at a certain place for two years was insufficient to show, as a matter of law, that a domicile had been established, in the absence of declarations of an intention to do so, or evidence of the exercise of political rights, payment of personal taxes, or selection of a place of residence or business.

PRESUMPTIONS:  *Marriage.* In the absence of testimony to the contrary it is presumed that one shown to be unmarried remained single.

**Review on Appeal:**  *Failure to request charge below.* A party cannot object on appeal to an instruction as abstract and not especially applied to the evidence, when no more explicit instruction was requested.

*Failure to make timely objection to testimony.* Where evidence was admitted without objection, the overruling of a subsequent motion to strike out was not error.

*Showing purpose of offered testimony.* Where it is not apparent from a question or from statement of counsel what was proposed to be proven thereby, error cannot be predicated on a rule excluding such question.

*Appeal from Wayne District Court.*—HON. W. H. TEDFORD, Judge.

SATURDAY, FEBRUARY 1, 1902.

PLAINTIFF began an action against Wm. D. Wood July 5th, 1899, and caused certain land devised to him by

his father, Jeremiah Wood, to be attached. The inter-
veners, children and grandchildren, as residuary legatees
under the will, filed a petition of intervention, alleging that
said William, an unmarried man, left his home about 15
years previous, and had not been heard from for more than
7 years prior to the death of his father. The issue tried
was whether William died before the testator. The jury
found he did, the court dissolved the attachment levy, and
plaintiff appeals.—*Affirmed.*

*R. C. Poston* for appellant.

*Miles & Steele* for appellees.

LADD, C. J.—The testator, Jeremiah Wood, died in
August, 1898; and, of course, if his son Wm. D. departed
life before that time, he did not take the land attached
under the will or as heir. Unmarried when he left
home in 1878 or 1879, and when last heard from,
that status will, in the absence of any showing to the
contrary, be presumed to have continued. No direct evi-
dence of his demise was introduced. The interveners relied
solely upon the presumption of death arising from absence
from home without intelligence concerning him for a
period of more than seven years. *Sherod v. Ewell,* 104
Iowa, 253; *Burr v. Sim,* 4 Whart. 150 (33 Am. Dec. 50).
Their evidence tended to show that they had heard from
him frequetly after he left his home in Wayne county until
1887. During this period he had written from Montana,
Idaho, Oregon, and Mexico, and the last letter came from
a hospital in San Francisco, Cal. He had been afflicted since
boyhood with what is commonly known as a "white swelling,"
for which he had undergone several operations, was addicted
to the use of intoxicating liquors, and was not strong physi-
cally. This was met by proof that William was involved
financially when he left home, and the testimony of one

Blagg that he had seen a man at Central City, Neb., six
years previous, who had declared he was not a son of Jere-
miah Wood, but whom the witness, who had known Wil-
liam prior to his departure, finally concluded was that per-
son, though larger and younger than described at the trial.
It appeared that William had dealt in stock during the first
two years after he left Iowa, at Helena; that he sometimes
drove cattle and horses to Idaho for sale, and was for a
few months employed on a ranch near Helena. The
appellant insists that he had established a domicile
in Montana, and absence therefrom, rather than
from his Iowa home, should be considered in passing upon
the probability of his death. It is to be noted that all
the *indicia* ordinarily resorted to in order to prove domicile
were wanting, to-wit, declarations to that effect. the exer-
cise of political rights, payment of personal taxes, a place
of residence or of business, etc. At most, this was a ques-
tion for the jurors; and they were told, if they found "from
the evidence that said Wm. D. Wood had any fixed and
permanent home after he left his father's home in this
county, then the absence of seven years, before defined,
must have been from such permanent and fixed residence.
But if you find that the said Wm. D. Wood had no perma-
nent and fixed home elsewhere than in Wayne county that
would be strictly termed a 'permanent home,' or if you find
from the evidence that he traveled from place to place, re-
maining at no one place long enough to make a permanent
home, then you will confine yourself to his absence from
his home here in Wayne county, as before defined to you
in these instructions." That this instruction is correct, in
the abstract cannot be questioned. A domicile once acquired
is presumed to continue until shown to have been changed.
"To constitute the new domicile two things are indispens-
able : First, residence in the new locality; and, second,
the intention to remain there. The change cannot be made
except *facto et animo*. Both are alike necessary. Either

without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains." *Mitchell v. U. S.,* 21 Wall. 350 (22 L. Ed. 584). See, also, *Botna Valley State Bank v. Silver City Bank,* 87 Iowa, 479; *Moffett v. Hill,* 131 Ill. 239 (22 N. E. Rep. 821); *Bangs v. Inhabitants of Brewster,* 111 Mass. 382. But it is said the law should have been especially applied to the evidence adduced. A sufficient answer is that, had plaintiff desired a more explicit instruction, he should have requested it. The same is true of his complaint of the failure to direct particular attention to evidence which might have been considered as tending to rebut the presumption of death. It is to be said, however, that the facts were not complicated, and it is doubtful whether the jury would have been aided by a more particular reference to the evidence in the charge.

II. Isaac Wood was asked "what the letters contained you received in 1887?" To this plaintiff objected as not the best evidence, but there was no ruling. The next question was, "You say you received some letters from him?" To this no objection was interposed, but the court declared the evidence competent, saying: "It does not go in to prove the contents of the letter, or for any purpose except to show whether he was dead." So that the admissibility of the evidence of the contents of the letters was not passed on, but it was afterwards received without objection. Some time after Robert Wood had detailed what certain letters contained, the plaintiff moved that such evidence be striken from the record; but a party cannot sit by and allow testimony to be given, and then, if unsatisfactory, ask to have it stricken. *State v. Marshall,* 105 Iowa, 38.

III. The plaintiff was asked if he had a conversation

with Jeremiah Wood, five- or six years before his death, as to where William was. On objection, the answer was excluded. Nothing contained in the question or statement of counsel indicated what was proposed to be proven, and for this reason, if for no other, error cannot be predicated on the ruling. Notwithstanding adverse rulings in the first instance, Isaac Wood was allowed to state the financial condition of William when he departed from home; and Blagg to give his opinion of the identity of the person he met at Central City, Neb., as William.

Some other matters, too often decided to require any further attention, are discussed.

The record is without reversible error, and the judgment is AFFIRMED.