JOHN RILEY v. MISSOURI PACIFIC RAILWAY CO.

FILED MAY 20, 1903. No. 12,735.

1. **Reception of Evidence After Demurrer.** The reception of evidence tendered by the defendant, after a decision against him on a demurrer to plaintiff's evidence, is not error. *Dunn v. Bozarth,* 59 Neb. 244, followed and approved.

2. **Rulings on Evidence.** Rulings of the trial court on the admission of evidence, *held,* not prejudicial.

3. **Exceptions to the Exclusion of Testimony.** Exceptions to the exclusion of testimony are unavailing, unless there be tender made of the proof which it was sought to elicit. *Hambleton v. Fort,* 58 Neb. 282, followed and approved.

4. **Instruction: OBJECTION.** Where no request is made for a more explicit instruction, an objection can not be entertained because the one given is vague and indefinite.

5. **Negligence: QUESTION FOR JURY.** The existence of negligence should be proven to and passed upon by the jury as any other fact.

6. **Comparative Negligence.** The doctrine of comparative negligence is not recognized in this state.

7. **Instructions.** Instructions given, examined and approved.

8. New Trial: DISCRETION. A sound discretion is reposed in the trial
court in refusing a new trial on the ground of newly discovered
evidence which is cumulative in its character.

ERROR to the district court for Lancaster county: LIN-
COLN FROST, DISTRICT JUDGE. *Affirmed.*

*Jesse B. Strode, Edmund C. Strode* and *D. J. Flaherty,*
for plaintiff in error.

*Bailey P. Waggoner, James W. Orr* and *Adolphus R.
Talbot, contra.*

OLDHAM, C.

This was an action for personal injuries which plaintiff
sustained while driving a team hitched to a lumber wagon
across the railroad track of defendant on a public crossing
on North 14th street, in the city of Lincoln, Nebraska. It
appears from the testimony that the plaintiff had pur-
chased some coal which was in his wagon box, at a coal
yard some distance north of the railroad crossing; that his
son, a man of the age of 35 years, and his grandson, a
youth of about 17 years, were also in the wagon and that
they were driving south toward plaintiff's home, at the
time the accident occurred; the plaintiff's evidence shows
that from the wagon there was a clear view of defendant's
track for about 100 feet before the crossing was reached;
that when plaintiff was from 30 to 60 feet from the railroad
crossing, he noticed an engine attached to two coal cars and
a box car, which he says was standing still, about a block
east of the crossing; that he then looked westward along
defendant's tracks and saw no trains coming from that di-
rection, and that he then proceeded to drive across the
track; that when he reached the track he discovered, for
the first time, that the engine, which was on the east side
of the crossing, was in motion and had backed its cars to
within about 10 feet of the crossing; that he was on the
track before he made this discovery and was forced to
attempt to drive across to avoid a collision. The son and

grandson jumped from the wagon, and do not appear to have been seriously injured; the wagon, however, was run into by the cars and plaintiff was thrown under the hind car and seriously and permanently injured.   Plaintiff's evidence tended to show that the accident was occasioned by the negligence of defendant in backing its train over a much used public crossing without blowing the whistle, ringing the bell, keeping a flagman at the crossing, or placing a brakeman or other employee on the rear car of the train to give warning of its approach.   There was no contention that the train was running at an unusual rate of speed, but there was proof of an ordinance of the city which required the ringing of the bell, and blowing of the whistle, and the keeping of a flagman or other employee, to warn of danger at the crossing.

The defendant on its part contended that it had complied with all these requirements by ringing the bell, blowing the whistle and having a switchman standing on the rear car hallooing and warning the plaintiff and others against attempting to cross the track while the train was approaching; and that the injury was occasioned by plaintiff's negligence in attempting to cross in front of a moving train after having been properly warned of its approach. On issues thus joined, there was a trial to a jury, verdict for defendant, and plaintiff brings error to this court.

We shall consider the allegations of error in the proceeding, in the order in which they are presented in plaintiff's brief.   At the close of plaintiff's testimony, defendant filed a motion for a non-suit, and to direct a verdict for defendant.   Plaintiff thereupon filed a motion to instruct the jury to return a verdict for plaintiff.   Each of these motions was overruled by the trial court, and defendant, over the objection of plaintiff, was permitted to introduce his testimony.   Plaintiff's contention is that, as defendant's motion amounted to a demurrer to plaintiff's testimony, it was error for the trial court to permit the defendant to proceed with its testimony after overruling its motion.   Some authorities are cited from other states

which seem to support this contention, but, however it may be elsewhere, the rule in this state seems to be firmly established that when at the close of plaintiff's testimony, in a civil action, the defendant desires to test the sufficiency of plaintiff's evidence to sustain a verdict, he may file a request for an instruction for that purpose, and if his request be denied, he may proceed then to introduce his own evidence. This rule was favorably commended and adhered to in *Dunn v. Bozarth,* 59 Neb. 244, in which it was said:

"The reception of evidence tendered by the defendant, after a decision against him on a demurrer to plaintiff's evidence, is not error."

Complaint is next lodged against the action of the trial court in the admission of evidence. On the cross-examination of one of plaintiff's witnesses, defendant's counsel were permitted, over plaintiff's objection, to ask the witness if he had not made a statement in writing shortly after the injury, containing certain declarations differing from the statements to which he had just testified. It was objected that it was improper to ask this question without first showing the witness a copy of the written statement. Whatever technical merit may have attached to this objection at the time it was made, it was all cured by the subsequent action of plaintiff's counsel in consenting that the entire written statement might be offered in evidence, which was accordingly done.

Complaint is also made of the action of the trial court in sustaining defendant's objection to two questions propounded by plaintiff's counsel to one of his witnesses on re-examination. As the plaintiff did not follow his question by an offer to prove the answer sought to be elicited, we can not examine this contention, if it were otherwise meritorious. *Hambleton v. Fort,* 58 Neb. 282.

At the close of the testimony, numerous instructions were requested by counsel for the contending parties. The requests were all denied, and all the instructions submitted to the jury were given on the court's own motion;

so that to determine whether or not the court erred either in the giving or refusing of instructions, it is necessary to examine the instructions given and ascertain whether or not they have fairly presented to the jury each material issue arising on the pleadings and proofs contained in the record.

Paragraphs 1, 2, 3 and 4 of the instructions given by the court are confined to a statement of the issues and directions as to the burden of proof. None of these are complained of. Paragraph 5 defines actionable negligence. This instruction is complained of by plaintiff as being couched in language that an ordinary juryman could not understand and as being vague and indefinite. It is not contended, however, that there is anything inherently wrong in the definition given. While we agree with counsel that "instructions to a jury should be clear, explicit and definite, and couched in plain, simple language," and while we do not commend the instruction given either for clearness or precision, yet plaintiff made no request for an instruction defining actionable negligence, and, consequently, under the well established rule of this court, he is not entitled to complain of the vagueness and uncertainty of the one given. *Republican V. R. Co. v. Fink,* 18 Neb. 89.

Paragraphs 6, 7 and 8 of the instructions given define contributory negligence and tell the jury that if the plaintiff has proved his case without disclosing negligence on his part, the burden is upon the defendant to prove contributory negligence. These instructions are each couched in concise terms and no complaint is lodged against any of them. Paragraph 9 defines ordinary care. Paragraph 10 defines the proximate cause of injury. Paragraph 11 tells the jury that they have been permitted to view the premises and may consider what they saw there as any other evidence in the case. Paragraph 12 is as follows:

"In determining whether the defendant's employees have been guilty of actionable negligence as hereinbefore defined, you should take into consideration the fact that the

defendant was pushing its train backward, and also the fact that the defendant had no flagman at its crossing at 14th street; you should also consider whether the bell was rung and the whistle sounded; whether there was a brakeman on the rear end of defendant's train; you should also take into consideration the amount of travel across defendant's track at 14th street, and all the other facts and circumstances shown in the evidence bearing upon this question. And you are instructed that while it was the duty of the defendant's employees to comply with the ordinances of the city relating to the ringing of the bell of the engine, and to the stationing of a flagman at the 14th street crossing, yet a failure on the part of the defendant's employees to comply with said ordinances in either or both of these respects, while that may be considered by you as evidence tending to prove the actionable negligence of the defendant's employees, does not necessarily demand an inference of negligence."

This instruction we have set out at length for the purpose of determining whether or not it fairly presented the question of defendant's alleged negligence, in approaching this public crossing, to the jury. Plaintiff had made numerous requests for instructions on this question which were all refused, and this one given in their stead.

The first principle contended for in the requests which were refused, is that if defendant backed its train over the public crossing without giving the required signals, then as a matter of law it was guilty of actionable negligence. This court has decided many times that the existence of negligence should be proved to and passed upon by the jury as any other fact, and that it is improper to state to the jury a circumstance or group of circumstances as to which evidence has been introduced on the trial and instruct that such fact or group of facts amount to negligence in law. The approved practice is to instruct the jury that such facts or circumstances, if established by the weight of the evidence, are proper to be considered in determining the existence of negligence. *Missouri P. R. Co. v. Geist,* 49 Neb. 489.

Another principle contended for in the instructions re-
fused, is founded on the doctrine of comparative negligence
which is not recognized in this state. *Missouri P. R. Co.
v. Fox,* 56 Neb. 746, 749.

The other proposition contended for and refused was
that, if no signals were given, plaintiff, as a matter of law,
would not be guilty of contributory negligence in driving
across the railroad track at the public crossing. Instead
of declaring this fact as a matter of law, the court sub-
mitted the question of plaintiff's contributory negligence
to the jury, under all the facts and circumstances proved
in the case, in the instruction immediately following the
one just discussed. It follows, from what has been said,
that, in our view, the jury were properly instructed both
on the question of actionable negligence of defendant and
contributory negligence of the plaintiff.

Paragraph 14 of instructions given told the jury that
the rights of the public and of a railroad company at a
public crossing are mutual and reciprocal, and that both
must use the highway with due regard for the safety of
others; that the train of the railway company has the right
of priority in the use of a crossing, provided due and timely
warning of its approach is given. Paragraph 15 says that
a railroad crossing is a place of danger and that all per-
sons situated as the parties to this suit, are bound to take
notice of that fact; that plaintiff, upon approaching the
crossing of defendant's track, was bound to use care com-
mensurate with the perils involved and that the law did not
require the plaintiff to exercise extraordinary care. Para-
graph 16 told the jury that if they believed that on account
of the want of ordinary care on the part of defendant, he,
plaintiff, found himself suddenly in a condition of im-
minent peril or danger, the law would not hold him guilty
of contributory negligence merely because in that emerg-
ency he did not act in the best way to avoid injury.

These instructions seem to state the law as favorably as
possible to plaintiff's contention.

The 17th paragraph of the instructions is assailed in

plaintiff's brief. This instruction tells the jury, in sub-
stance, that if they believe from the evidence that defend-
ant gave proper signals of the approach of its train and
stationed a man on the rear car to warn plaintiff of his
approaching danger, and that plaintiff was so warned while
in a place of safety, then the defendant would not be liable
for the injury received. We see no reason why this in-
struction should not have been given. It simply submitted
to the jury defendant's theory of the accident as outlined
in its proof.

The next alleged error called to our attention is the
action of the trial court in overruling plaintiff's motion
and supplemental motion for a new trial, the supplemental
motion being based on newly discovered evidence.

In determining the merits of this contention it is well
to keep in mind the conflicting theories of plaintiff and
defendant as to the facts and circumstances surrounding
the accident. Plaintiff contended that when he first saw
the train, some distance from the track, it was standing
still. He also contended that there was no employee of
defendant on the hind car of the train to warn of the
approach of the train, and that no signals were given on
its approach to the crossing. The defendant on the con-
trary contended that the train was not standing still, but
was slowly backing and that the bell was being contin-
uously rung, that the whistle was sounded on nearing the
crossing and that there was a switchman on the back end
of the car hallooing as loud as he could and particularly
warning the plaintiff against attempting to cross the track.
The newly discovered evidence relied upon in support of
the supplemental motion consists of an affidavit of a wit-
ness who states that within a day or two after the accident,
he had a conversation with defendant's engineer on his
engine and he told him that the engine and train of cars
which collided with plaintiff were standing on a track a
short distance from the crossing and that he, the engineer,
started the train backing toward the crossing and forgot
to give any signal and that there was no brakeman on the

train. This affidavit is contradicted by counter-affidavits of the engineer and fireman, who positively deny any such conversation, and affirm the former testimony given by them that the train was in motion all the time. Another affidavit was filed of a conductor of the Burlington & M. R. R. Co. who stated that he was in a coal office about 100 feet from the crossing at the time of the accident and was looking out of a window when the accident occurred; that he heard no signals sounded and saw no one on the hind car of the train at the time the accident occurred. Two affidavits were also filed stating that after the trial two of defendant's witnesses had told affiants that they had received money, for the testimony which they gave on the trial, from the defendant. Affidavits of diligence in procuring this testimony were also filed by plaintiff and his attorneys. Numerous counter-affidavits were filed denying each of the allegations of this newly discovered evidence. It is plain from an examination of this evidence that it is all either cumulative or impeaching in its character. There is no strong probability that this testimony would change the result, if a new trial were granted. A sound discretion is reposed in the trial court in refusing or granting a new trial on account of newly discovered evidence which is cumulative in its character, and this court has said in *Davis v. State,* 51 Neb. 301:

"The denial of a motion for a new trial upon the ground of newly discovered evidence, will not be held erroneous when it appears that the newly discovered evidence is cumulative and would not probably change the result already reached."

Finding no reversible error in the trial of this cause, we recommend that the judgment of the district court be affirmed.

AMES and HASTINGS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.