## McCURLEY v. NATIONAL SAVINGS & TRUST CO.

(Court of Appeals of District of Columbia.   Submitted April 3, 1919.   Decided May 5, 1919.)

No. 3207.

1. APPEAL AND ERROR ⬅️692(1)—RESERVING GROUNDS FOR REVIEW—EVIDENCE.

Sustaining objection to a question does not establish reversible error, where the record does not indicate nature of testimony expected to be elicited.

2. WITNESSES ⬅️178(3)—TRANSACTIONS WITH DECEDENT—DECLARATIONS OF DECEDENT—WAIVER OF INCOMPETENCY.

Where plaintiff testified she rendered services to defendant's testate under a contract made by a third party in behalf of deceased, a question on cross-examination relative to that contract did not waive the protection of Code of Law 1901, § 1064, prohibiting a surviving party testifying regarding declarations of a deceased, so as to permit plaintiff to thereafter testify to a contract made directly with deceased.

3. APPEAL AND ERROR ⬅️1058(2)—HARMLESS ERROR—EVIDENCE.

Excluding a conversation is not reversible error, where witness was later permitted to state the conversation.

4. WITNESSES ⬅️163—COMPETENCY—DECLARATIONS OF DECEDENT.

Code of Law 1901, § 1064, providing that, if one of the parties to a transaction dies, the other party cannot testify as to deceased's declarations, etc., prohibits a surviving party from testifying regarding statements such party heard deceased make to third parties.

5. WITNESSES ⬅️247—STRIKING OUT ARGUMENTATIVE STATEMENTS.

Where a witness answered on cross-examination that she did not make a certain statement "because it wouldn't have been the truth," the quoted words were properly stricken as argumentative.

6. APPEAL AND ERROR ⬅️1047(3)—HARMLESS ERROR—EVIDENCE.

Where a witness, upon being asked what services plaintiff rendered, replied that it was difficult to answer, "for she did everything," striking the quoted words is not reversible error, where the witness was later permitted to state what services she had observed plaintiff rendering.

7. TRIAL ⬅️252(12)—INSTRUCTIONS—VALUE OF SERVICES—EVIDENCE.

Where plaintiff alleged she rendered services under an express contract fixing a specified monthly compensation, and there was no evidence regarding the reasonable value of her services, requested instructions, based upon the theory that plaintiff might recover on a quantum meruit, were properly refused.

8. LIMITATION OF ACTIONS ⬅️21(3)—PERIOD—CONTRACT ACTIONS.

Where plaintiff claimed she rendered services to defendant's testate under an express contract for a specified monthly compensation, and more than three years elapsed between the date payment became due and the bringing of action, the claim is barred by Code of Law 1901, § 1265 prescribing a three-year limitation period for actions on express or implied contracts, etc.

9. TRIAL ⬅️235(1)—INSTRUCTIONS—EVIDENCE.

In action to recover for services rendered defendant's testate, a charge that verbal statements, repeated a long time after by those who heard them, are likely to be affected by a failure to remember exactly, etc., was not improper, where the trial court also stated he expressed no opinion concerning the weight of the evidence.

Appeal from the Supreme Court of the District of Columbia.

Action by Cornelia P. McCurley against the National Savings & Trust Company, executor of the estate of Josiah Bellows, deceased. Judgment for defendant, and plaintiff appeals. Affirmed.

Daniel W. Baker and William E. Leahy, both of Washington, D. C., for appellant.

J. J. Darlington and W. C. Sullivan, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. The appellant as plaintiff below brought action on the money counts against the appellee as executor of the estate of Josiah Bellows, deceased, to recover $16,297.84, a balance alleged to

be due her for personal services, and explained her declaration by a bill of particulars which reads:

"To services as housekeeper, attendant to Helen Bellows, wife of Josiah Bellows, and Josiah Bellows, for managing the estate and doing all work in and about the house, nursing and caring for both Helen Bellows and Josiah Bellows, attending to the business of Josiah Bellows, collecting rents, and doing the banking business of Josiah Bellows, superintending repairs of property, and looking after all the business, and caring for him and his wife when they were unable to care for themselves, and devoting all her time to the interest of Josiah Bellows, and his estate, all covering a period of from July 22, 1901, to June 17, 1915, at rate of $125 per month."

The jury found against her, and from a judgment in favor of defendant she appeals, assigning only 42 errors, all of which, with the exception of 3, are pressed. Of those argued 23 deal with the refusal of the court to permit certain questions propounded to witnesses to be answered, 2 with the action of the court in striking out testimony, 1 with its refusal to strike out evidence, 7 with the refusal by the court of requests made by the plaintiff for instructions to the jury, and 6 with instructions given by the court. We have considered them all carefully, but to analyze each and set down here the result of our work would expand this opinion far beyond its permissible limits; nor do we think it necessary to do so for the proper disposition of the controlling questions in the case.

[1] With respect to the first group of assignments, the plaintiff in no instance, except one, which we shall examine presently, disclosed to the court what she expected to prove by the answers excluded. This is fatal to those assignments. A ruling of the court that a question propounded by a party to his own witness should not be answered must be followed by an offer of the testimony expected, or by something which would clearly indicate it, if it is desired to reserve the point for review in this court. De Forest v. United States, 11 App. D. C. 458, 460; Turner v. American Security & Trust Co., 29 App. D. C. 460, 469. See also Tuttle v. Wood, 115 Iowa, 507, 88 N. W. 1056; Riley v. Missouri Pacific Railroad Co., 69 Neb. 82, 95 N. W. 20; Tietien v. Snead, 3 Ariz. 195, 24 Pac. 324; Leverett v. Bullard, 121 Ga. 534, 536, 49 S. E. 591; State ex rel. Repp v. Cox, 155 Ind. 593, 596, 58 N. E. 849; Boisvert v. Ward, 199 Mass. 594, 597, 85 N. E. 849; Hathaway v. Goslant, 77 Vt. 199, 208, 59 Atl. 835. We are unable to say in the present case whether or not the forbidden testimony would be favorable or unfavorable to the plaintiff. We might assume that it would support her case, but we are not permitted to do this. There is no presumption that the court erred. Appellant, if she would succeed here, must establish error affirmatively. Cliquot's Champagne, 3 Wall. 114, 140, 18 L. Ed. 116; Sturges v. Carter, 114 U. S. 511, 522, 5 Sup. Ct. 1014, 29 L. Ed. 240; Bear Lake, etc., Co. v. Garland, 164 U. S. 1, 25, 17 Sup. Ct. 7, 41 L. Ed. 327.

[2] Even if there were proper offers of testimony, the result would be the same. The chief complaint upon this basis relates to the refusal of the court to permit the plaintiff on redirect examination (a) to state her alleged contract with Mr. Bellows and (b) to relate statements made by Mr. Bellows to third parties, in plaintiff's hearing, with re-

spect to the contract. In her examination in chief the plaintiff said that the contract under which she went to work for Bellows was made with her by Mrs. May L. Dickerson, acting, the context shows, for Bellows. She then described fully what she did while in his employ. In the course of the recital she stated that her son lived with her at the Bellows house, her husband having died some time before. On cross-examination counsel for the defendant asked her this question: "Was it not a distinct part of your contract of employment that your husband—son and husband—should not be there?" To which she answered, "There was nothing in the contract about that." The question clearly referred to the Dickerson contract, for up to that time there was no mention of any other, and was proper cross-examination.

Later the plaintiff was recalled for further direct examination and was asked to state the full contract that she had with Mr. Bellows. The record discloses that the manifest purpose of this was, not to restate the Dickerson contract, but to prove another contract—one which she claimed to have made with Mr. Bellows personally. An objection to the question was sustained on the footing that the witness was incompetent under section 1064 of the Code to testify to any transaction with the decedent. It is now urged that by the above question on cross-examination the defendant waived the protection of the Code, and that it was therefore competent for plaintiff to testify to a contract with Mr. Bellows personally. This might be so, if the question on cross-examination related to such a contract; but, as we have seen, it did not. It concerned the Dickerson contract only, and did not open the door to an investigation of any other contract.

[3] On cross-examination the plaintiff was asked whether or not she made certain statements to the witness Stetson, representing the defendant trust company, when she received $30 from him and gave him a receipt therefor, to which she responded with qualified answers. There were two receipts. The first stated that the money was received "as housekeeper for decedent"; the second, that it was received on account. She desired to explain the receipts, and so her counsel on redirect examination asked her to give the whole conversation which she had with Stetson at the time the first one was given. The court refused to let her do this. Thereupon her counsel noted an exception and offered to show by the witness that she had received the money, not for housekeeping, but merely as an advancement "on a contract that had been made with her."

Defendant contended that the plaintiff was a mere housekeeper, while she asserted, as her bill of particulars shows, that her duties were of a varied character and much more important than those involved in housekeeping. Later she was permitted to say that she did not receive the money "for wages as housekeeper." "I told him [Stetson] that I was only—that bill was only a portion of my allowance." In the same connection this question was put to her: "I know, but I mean the $30 receipt, account of claim for wages as housekeeper for decedent. What conversation did you have with Mr. Stetson about that?" To which she answered, "Just exactly as I told you, that there was that much due to me on this stipulated amount that he was giving me." At first reading the record would seem to indicate that it was

the purpose of the court to strike out this answer, but a closer examination shows that subsequently the parties agreed that it had not been eliminated. Thus it appears that, notwithstanding the previous ruling of the court, she was allowed to state her conversation with Mr. Stetson at the time the receipt in question was given, and, this being so, she has no cause for complaint because she was denied that right in the first instance.

After the two receipts had been placed in evidence, the plaintiff moved to strike them out on the ground, as stated, that the court had not permitted her "to show fully the conversation that surrounded the making of the receipts." As we have just said, this contention finds no support in the record.

[4] Appellant asserts that she should have been permitted to testify to statements made by Mr. Bellows to third parties in her hearing. Section 1064 of the Code provides:

"If one of the original parties to a transaction or contract has, since the date thereof, died, * * * the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased"

—unless the privilege has been waived as provided in the section. There was no waiver here. The prohibition of the statute goes to any transaction with or declaration or admission of the deceased.

Appellant urges that if the admission was made to a third person, but in the hearing of the other party, the latter may testify to it. For this there is no warrant in the statute. It clearly forbids the surviving party to testify to any admission of the deceased made with respect to a transaction had with him. As Mr. Justice Morris said in Dawson v. Waggaman, 23 App. D. C. 428, the Code "is too plain and explicit to allow of any controversy in this regard. The provision is a just one and the testimony was properly excluded." To the same effect are Patten v. Glover, 1 App. D. C. 466; Manogue v. Herrell, 13 App. D. C. 455. Like statutes in other jurisdictions are construed according to the views just expressed. Brader v. Brader, 110 Wis. 423, 85 N. W. 681; Heinisch v. Pennington, 73 N. J. Eq. 456, 68 Atl. 233; Wilder v. Wilder, 138 Ga. 573, 75 S. E. 654; Parks v. Caudle, 58 Tex. 216, 221; Nicholson v. Kilbury, 80 Wash. 500, 141 Pac. 1043.

When examined with respect to the statute they construe there is nothing in the decisions cited by appellant contrary to our holding. In those cases the statute prohibited only transactions and communications between the survivor and the decedent. This is illustrated by Withers v. Sandlin, 44 Fla. 253, 262, 32 South. 829; Mollison v. Rittgers, 140 Iowa, 365, 366, 118 N. W. 512, 29 L. R. A. (N. S.) 1179; McCall v. Wilson, 101 N. C. 598, 600, 8 S. E. 225; In re Estate of Powers, 79 Neb. 680, 682, 113 N. W. 198. Our Code is quite different. It excludes "any * * * declaration or admission of the said deceased"—not merely those which were had between the survivor and the deceased, but any. Even in New York, where the statute makes the witness incompetent only as to "any communication between the witness and the deceased person," it was held in a very persuasive opinion (Griswold v. Hart, 205 N. Y. 384, 98 N. E. 918, 42 L. R. A. [N. S.] 320, Ann. Cas. 1913E, 790), that it closed the lips of the sur-

vivor as to communications with third parties which he heard but in which he did not participate. Wigmore in his work on Evidence (chapter 33, § 578 [referred to in the brief as section 78]), cited by appellant, criticizes all statutes on the subject as "based on a fallacious and exploded principle." His argument might be enlightening if addressed to the Congress, but it does not help in solving the question before us, for, no matter what the basis of the statutes may be, the courts must enforce them while they exist.

[5, 6] Mrs. McCurley was asked on cross-examination if she did not tell another person a certain thing, to which she replied, "I never told her anything of the kind, because it wouldn't have been the truth." The court on motion struck out the words "because it wouldn't have been the truth," and in doing so no error was committed. The answer was argumentative. Another witness was asked to tell just what Mrs. McCurley did in the Bellows family, and she answered, "Why, that is rather a hard question to tell just what she did, for she did everything." The court struck out "for she did everything." This was hardly an answer to the question. Besides, its erasure from the record could not have worked any prejudice to the plaintiff, in view of the fact that in response to the next question the witness was allowed to state what she observed Mrs. McCurley do for the Bellows family.

[7] The requests for instructions which were refused by the court were based on the theory that the plaintiff was entitled to recover according to the value of her services—upon a quantum meruit; but this overlooks the fact that her bill of particulars, by which she is bound, stated that she had an express contract under which she was to be paid for the services enumerated in the bill "at rate of $125 per month." The value of her services was immaterial, for she had, according to her theory, a contract by which Mr. Bellows was obligated to pay her a fixed sum, irrespective of their value. Moreover, there is not a particle of testimony in the record tending to show what the value of her services was. Therefore there was nothing upon which the jury could have based a verdict for their value. Clearly, the court committed no error in this regard.

[8] It is said in the brief that the court confused the jury on the question of the statute of limitations. We do not think so. There was evidence tending to show that, after money for her services became due to Mrs. McCurley, she permitted it to remain in the hands of Mr. Bellows. The jury were told by the court that, if more than three years had elapsed between the date on which it fell due and the bringing of the action, all claim for it would be barred by the statute of limitations. In this we can perceive nothing obnoxious to the law. Code, § 1265.

[9] Finally, it is asserted that the court erred in an instruction which it gave concerning the weighing of the testimony of the witnesses by the jury. The court said that in discharging this duty they had—

"the right to consider the well-recognized condition that surrounds * * * verbal statements which are repeated a long time afterwards by those who heard them. Those infirmities include * * * the failure to remember exactly, * * * and the inability, with the best of intention, accurately to repeat, what was said."

We see nothing improper in these observations. They are in accord with the practical experiences of men. The jury, with these suggestions to guide them, were left wholly free to weigh and determine the facts according to their best judgment, for the learned trial justice had told them that he expressed no opinion concerning the weight of the evidence. Wiborg v. United States, 163 U. S. 632, 656, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Simmons v. United States, 142 U. S. 148, 153, 12 Sup. Ct. 171, 35 L. Ed. 968; Union Pacific Railroad Co. v. Thomas, 152 Fed. 365, 371, 81 C. C. A. 491.

We are satisfied that the appellant's case was fully and fairly submitted to the jury, and that, under the law, she has no just cause for complaint. For this reason the judgment should be, and it is, affirmed, with costs.

Affirmed.