Rockingham, }
  June, 1900. }

### COOPER *v.* HOPKINS *& a.*

If testimony in relation to an immaterial matter is elicited upon cross-exam-
  ination, it is not open to contradiction for the purpose of disparaging the
  credibility of the witness.

The erroneous admission of prejudicial evidence, in contradiction of testi-
  mony as to an immaterial matter elicited upon cross-examination, is suffi-
  cient cause for setting aside a verdict.

Where trespass to the person is occasioned by malice on the part of the de-
  fendant, the plaintiff is entitled to damages for injured feelings, although
  no physical injury is inflicted.

TRESPASS, to the person. Trial by jury. Verdict for the
plaintiff. The defendant Moore was manager of a dry-goods store
owned by the defendant Hopkins. The plaintiff's evidence tended
to show that, while she was standing among customers in the
store, Moore touched her upon the shoulder and requested her to
go into another room; and she not complying, he accused her of
larceny, seized her, pushed her, and searched her shopping-bag, all
in the presence of customers and clerks. The plaintiff's innocence
was admitted. The testimony, on direct examination, of a clerk
called by the defendants, tended to show that no assault was com-
mitted. This witness was asked on cross-examination "if two
customers [who were produced as witnesses by the plaintiff] did
not ask her three times to wait on them before she attended to
them, because she was intently watching what took place;" and
"if at the conclusion of the trouble she did not say in an excited
manner to the customers, 'I am glad he [Moore] has got left this
time,— he has done this same thing before.'" She answered both
questions in the negative. The plaintiff introduced, subject to
exception, the testimony of the two customers in contradiction of
the witness,— the court stating in the presence and hearing of the
jury that the evidence was admissible only upon the questions of
the credibility of the defendants' witness and the weight to be given
her testimony.

The defendants admitted that Moore might have touched the
plaintiff's shoulder to attract her attention, but denied that he
pushed her. There was no evidence that the plaintiff suffered, or
was put in fear of, any physical injury. The defendants excepted
to the denial of their request for the following instruction: "If
the jury find that no injury was done to the plaintiff's person by
the assault, and she was not put in fear of injury, she cannot

recover for alleged injuries to her mind or feelings, or for fanciful injuries." The jury were instructed that the plaintiff could not recover for fanciful injuries on any view of the facts.

*Thomas H. Simes* and *Samuel W. Emery*, for the plaintiff.

*Page & Bartlett*, for the defendants.

CHASE, J. The verdict cannot be disturbed on account of the ruling allowing the plaintiff to introduce testimony contradicting the answer of the defendants' witness to the first of the two questions mentioned in the case. Her testimony on direct examination tended to show that no assault was committed. As described by her, the affair was not such as would be likely to attract much attention, or cause excitement in the bystanders. If her attention was so absorbed by it that she neglected to attend to the repeated calls of customers, the fact would be inconsistent with her testimony. It would have a tendency, more or less weighty, to contradict her in relation to the main issue in the case, and so to discredit her.

The matters brought out by the second question were of a different character. Undoubtedly the plaintiff was at liberty to show that the witness was excited by the occurrence. This fact, besides having a tendency to contradict the witness on a material matter, might show that she was not in a proper frame of mind to correctly observe what took place. But the witness's state of excitement was referred to only incidentally. The principal matters sought for were the two statements made by the witness at the conclusion of the trouble,— one, an expression of gladness because Moore had got left, and the other an assertion that he had done the same thing before. If the joy of the witness tended to show bias, it was bias against Moore, and would naturally add weight to the testimony given in his behalf. It is reasonably certain that this was not the plaintiff's object. If the defendants could introduce the testimony for such purpose, it was for them to determine whether they would do so and take the risk of having incompetent, prejudicial testimony accompany it. The plaintiff certainly could not force incompetent testimony upon the defendants simply because it happened to have a connection with competent testimony that was beneficial to them. If she saw fit to show that the witness was prejudiced against the defendants, she would be limited to the use of competent testimony for the purpose. But whatever may be said of the expression of joy, no ground has been found upon which the assertion of the witness that Moore had done the same thing before can be regarded as

competent. It was not directly or indirectly inconsistent with her previous testimony. It had no tendency to show state of feeling, bias, corruption, source of knowledge, or interest in the subject-matter of the action. 1 Gr. Ev. (16th ed.), s. 461e; *Titus* v. *Ash*, 24 N. H. 319, 331; *Martin* v. *Farnham*, 25 N. H. 195. It had no tendency to characterize or elucidate the conduct of the witness at the time. *Plumer* v. *French*, 22 N. H. 450, 454, 455; *Morrill* v. *Foster*, 32 N. H. 358. It was not a spontaneous declaration of the circumstances as observed by her. 1 Gr. Ev. (16th ed.), s. 162f. It was not a part of the transaction itself, but was made at its conclusion, and, so far as appears, in the absence of the parties, when neither of them could have been influenced by it. *Hartnett* v. *McMahan*, 168 Mass. 3. It was hearsay evidence as to the fact asserted. If the fact had been relevant and material,— as it was not,— the proper inquiry of the witness would be, What do you now say about it?— not What did you say at a former time when not under oath? *Combs* v. *Winchester*, 39 N. H. 13, 16, 17. " It would be a dangerous rule which would admit such historical statements because they happened to be detailed when some transaction material to be proved was occurring." *Wiggin* v. *Plumer*, 31 N. H. 251, 268. In short, the matter was not relevant to the main issue, nor to any collateral issue in the case, and the form of proving it was also incompetent. It was " positively improper to be proved at all," and clearly falls within the class of testimony that cannot be contradicted. In *Seavy* v. *Dearborn*, 19 N. H. 351, 355, 356, the law on this subject is stated as follows: " In the cross-examination of witnesses, a great deal of latitude is allowed for the purpose of testing the memory, the capacity, or the honesty of the person under examination; and for that purpose inquiries may be pushed even to matters not positively material to the issue. But this license has various restrictions. In the first place, it does not extend so far as to authorize a party to prove, by a witness on cross-examination, things positively improper to be proved at all; and, secondly, he cannot, for the purpose of discrediting a witness, contradict, by other evidence, his statements that are improper or immaterial. In other words, he may, for the purposes before indicated, ask questions not strictly relevant to the issue, provided they do not tend to elicit testimony that is injurious or improper. But when a question of either kind has been put and answered, the party cannot introduce other evidence to contradict the witness, whether for the purpose of discrediting him, or for any other purpose. It is a very plain corollary to that rule, that a question not otherwise material or proper does not become so by force of any purpose of the examining party to make use of it to discredit

the witness by contradicting his answers to it." This extract was quoted with approval in *Combs* v. *Winchester*, 39 N. H. 13. The following authorities are to the same effect: *Boyce* v. *Railroad*, 42 N. H. 97; *Dewey* v. *Williams*, 43 N. H. 384; *Sumner* v. *Crawford*, 45 N. H. 416; *Willard* v. *Sullivan*, 69 N. H. 491. Indeed, it is an elementary rule of the law of evidence. 1 Gr. Ev. (16th ed.), *s.* 461*e*; Best Ev., *s.* 644 and notes.

It is said that the court had discretionary authority to allow the witness to be contradicted on this point for the sole purpose of discrediting her, although the point was immaterial and injurious to the defendants. This raises the question whether the authorities before cited have been overruled to this extent by later decisions. *Willard* v. *Sullivan* certainly has not been overruled, as it is the latest decision in which the subject was considered. There is no case in which the other authorities have been expressly overruled or their soundness has been questioned. Is there any case having that effect?

*Martin* v. *Farnham*, 25 N. H. 195, is cited by the plaintiff in support of her proposition. It was there held that evidence showing that a witness had made statements inconsistent with his testimony, in regard to material matters, is admissible to affect his credit; and that the state of feeling of a witness toward one of the parties is a material matter. This, instead of being in conflict with *Seavy* v. *Dearborn*, is in line with it.

In *Nute* v. *Nute*, 41 N. H. 60, one issue was, whether certain deeds had been placed in the possession of a third person as a delivery to the grantee. The defendant contended that, by the arrangement between the grantor and grantee, the latter was to give the former a bond or lease, and that one was drawn and placed in the hands of a third person (D) when the deeds were given to him, but that the papers were not delivered because of the failure of the grantee to perform his agreement. D was a witness, and testified that the grantor placed in his hands certain papers, among which were the deeds, that he did not remember that a bond or lease was among them, and that he thought he did not testify it was at a former trial. The court say: "Whether the bond or lease was deposited at the same time or not, was a circumstance bearing upon and qualifying the character of the act as much as a verbal declaration made at the time, and part of the *res gestæ*." Accordingly it was held that D's testimony at the former trial "would properly tend to impeach his credit and diminish the weight of his testimony as to the circumstances connected with the deposit of the deeds," and was admissible. The fact to which the contradictory testimony related was relevant to the issue.

*Martin* v. *Towle*, 59 N. H. 31, was case against a common carrier of passengers for an injury sustained by the overturning of a carriage driven by the defendant's servant, E. He was called as a witness by the defendant, and testified upon cross-examination that he did not remember that he told the plaintiff, in an interview after the accident, that he was sent by the defendant to tell the plaintiff that the defendant would make it right with him, and that he (E) supposed the accident happened through his carelessness. For the purpose of contradicting E, the plaintiff testified that E did make the statements. It does not appear that the testimony was admitted by an exercise of the court's discretion. The opinion shows that, to entitle a party to contradict testimony introduced by his opponent, it was deemed necessary that the testimony should have some relevancy to the matter in issue. Whether the principle was correctly applied in the case is a question that does not concern the present inquiry. See *Nebonne* v. *Railroad*, 67 N. H. 531, and *Guerin* v. *Telegraph Co.*, *ante*, *p.* 133.

*Merrill* v. *Perkins*, 59 N. H. 343, was case for disturbing the plaintiff in the occupancy of a house. The defendant was not allowed to ask the plaintiff's husband on cross-examination if he had been notified to quit every house he had lived in for ten years, and had been put out by legal proceedings in every case. Of this question, the court say, it was asked for the purpose of disparaging the credibility of the witness, and "how far justice required the cross-examination should be allowed to go in that direction was a question of fact to be determined at the trial term," citing *Gutterson* v. *Morse*, 58 N. H. 165. The question, whether the witness could have been contradicted if he had been allowed to testify on the subject, was not considered.

In *Perkins* v. *Towle*, 59 N. H. 583, the testimony of a witness related to acts and statements of a party thirty years or more prior to the time of the trial. For the purpose of showing that she was not old enough at that time to know anything of the transaction, she was asked on cross-examination when and by whom she was married, and, having stated that she was married in 1864 by L, the cross-examiner was allowed to show by the widow of L that he died in 1857. The age of the witness at the time of the transaction about which she testified might be very material in weighing her testimony, and the time of her marriage might have a tendency to show that fact. If one object of the testimony was to show that the witness, being mistaken or untruthful as to one fact, must be unreliable in other particulars, another and the main object was, as stated in the case, to show that she was not old enough to know about the transaction.

In *Watson* v. *Twombly*, 60 N. H. 491, it was held that the evi-

dence offered to contradict the witness had a tendency to show the state of feeling of the witness toward the opposite party, and therefore, as matter of law, was relevant to an issue in the case.

In *Quimby* v. *Blackey*, 63 N. H. 77, one of the plaintiff's witnesses had made threats against the defendant. This was a material matter, as has already been seen. *Titus* v. *Ash*, 24 N. H. 319, 331; *Martin* v. *Farnham*, 25 N. H. 195. The witness having been asked to give the exact language of the plaintiff's witness, answered that she had rather not, as it was obscene and profane, and that she sent her son out of the room to prevent him from listening to the profanity. The plaintiff's witness was recalled and allowed to testify that the defendant's witness was in the habit of using profane language, and to state the language she had used on various occasions. Of this testimony, the court say it was competent " as tending to contradict the witness upon a material point, and for the purpose of weakening her testimony." There is no suggestion that the court, in the exercise of discretion, was at liberty to admit it if it had not related to a material matter.

*Spalding* v. *Merrimack*, 67 N. H. 382, was case for injuries resulting from a defective highway. One Hill, called by the plaintiff, testified that there was a gully in the highway such as was alleged by the plaintiff; that he saw it before and after the accident, and because of it drew his firewood by another route. The defendants were allowed to introduce the testimony of the highway surveyor of the district, showing, in substance, that he told Hill before the accident to repair any defects he saw in the highway, and that he should be paid for it, and that Hill accordingly made some repairs, for which he was paid. The condition of the highway was the matter in issue, and the surveyor's testimony had a tendency to contradict Hill's testimony in regard to it. If there had been such a defect as Hill described, he would have been likely to repair it under the authority he had received from the surveyor, and as he had done in other instances. It was the conflict of the testimony with Hill's testimony describing the defect that gave it its obvious tendency to discredit Hill. The remark in the opinion that, if the testimony of the surveyor was improperly admitted, no ground for a new trial was presented, was not necessary for arriving at the decision. It is unreasonable to suppose that the court intended by this remark to overrule *Seavy* v. *Dearborn*, and the other cases cited.

In *Perkins* v. *Roberge*, 69 N. H. 171, the plaintiff sought to recover for building a baker's oven and furnace for the defendant. The defence was that the oven was not built according to the contract. The defendant, upon cross-examination, testified, subject to his exception, that he put his real estate out of his hands

about two months before the contract was made.   For the pur-
pose of showing that the date of this transaction was subsequent
to the date of the contract, the plaintiff was allowed to introduce
a copy of the deed.   As was said in *Gutterson* v. *Morse*, 58 N. H.
165, a " conveyance made by a defendant for the purpose of pre-
venting the satisfaction of the plaintiff's claim, may tend to show
the defendant's practical admission of the validity of the claim."
The contradiction in this case related to a material matter.

It cannot fairly be said that any one of these cases is an author-
ity for the proposition that the court may, in the exercise of judi-
cial discretion, admit testimony to contradict a witness in respect
to an immaterial matter merely for the purpose of discrediting him,
especially if the matter is " positively improper to be proved at
all."   If there is an expression in any of them from which it is
possible to infer such an idea, it will appear upon careful exam-
ination that the language was not used with that intent.   *Seavy* v.
*Dearborn* is not referred to in them, and it is unreasonable to sup-
pose that it would be overruled or modified without giving rea-
sons for the change, especially since the rule there applied is ele-
mentary in the law of evidence.   On the other hand, as before
stated, *Seavy* v. *Dearborn* has been cited and followed in numer-
ous cases.   So late as March, 1899, it was decided that the state-
ments of a witness in relation to an immaterial matter received
upon cross-examination were not open to contradiction for the
purpose of affecting his credibility.   *Willard* v. *Sullivan*, 69 N. H.
491.   Several of the authorities which follow *Seavy* v. *Dearborn*
were cited in support of the point.

It is improbable that in such cases a jury would always be able;
even after the most definite and clear instructions on the point, to
limit the application of the testimony to the question of credi-
bility.   There would be great danger that its natural tendency
would affect the main issues.   However intelligent and honest
jurors may be, they are not always able to control the use of testi-
mony in forming their verdict, but are liable to be unconsciously
influenced by the natural force of testimony, although making an
effort to withstand it.

If incompetent testimony is received by accident, the court's
power with reference to testimony in contravention of it can be no
greater than, or different from, its power with reference to the tes-
timony itself.   It can withdraw the incompetent evidence from
the jury, but has no power to allow them to treat it as competent
against the objection of a party.

There is another line of recent decisions which throw some
light upon the question before the court.   Suppose counsel had
put the question to the witness on cross-examination in this form,—

You stated, did you not, at the conclusion of the trouble, that Moore had done this same thing before? — and the question had been excluded, the defendants objecting to the statement of it in the presence of the jury, is there any doubt that the verdict would be set aside, unless the plaintiff procured a finding that it was not affected thereby? *Baldwin* v. *Railway*, 64 N. H. 596 ; *Demars* v. *Glen Mfg. Co.*, 67 N. H. 404 ; *Pearson* v. *Beef Co.*, 69 N. H. 584. The matter stated in the question is certainly as incompetent and prejudicial to the objecting party as were the matters stated in the questions considered in those cases. If the verdict would be set aside for such cause, it must be for the cause under consideration. The fact that the incompetent testimony is laid before the jury under favorable rulings by the court, instead of through the misconduct of counsel, tends to increase rather than diminish its prejudicial effect. As the law regards it, there is greater danger of causing unfairness in a trial when incompetent testimony is so submitted than when it is thrust before the jury by the misconduct of counsel in opposition to the court's ruling ; for, in the former case, the law sets aside the verdict if against the objecting party, and will not receive the testimony of jurors to show that the verdict was not affected by the incompetent testimony (*Mason* v. *Knox*, 66 N. H. 545) ; while in the latter case it allows the presiding judge to decide the question of the fairness of the trial. *Bullard* v. *Railroad*, 64 N. H. 27 ; *Demars* v. *Glen Mfg. Co.*, 67 N. H. 404, 407.

A rule of law that would permit a witness to be contradicted as to immaterial matters for the purpose of affecting his credibility would greatly multiply the issues of fact to be decided by the jury, and increase the liability to error in the result. The real and vital issues in the case would be likely to be buried or hidden from the view of the jury by rubbish, or something worse. Cross-examination is a powerful agency for bringing to light the character of a witness for truth. The law permits great latitude in the exercise of it, even to the extent of allowing the cross-examiner, with the permission of the court, to inquire about immaterial matters, provided they are not " positively improper to be proved at all." At the same time, the law guards, to some extent, against an abuse of the privilege by prohibiting the cross-examiner from contradicting the witness as to immaterial matters. If this limitation was abolished, there is reason to believe that the court would be called upon to perform the office of the limitation by an exercise of discretionary authority. There seems to be no good reason for transferring this function from a rule of law — arbitrary though it may be — to the court. On the other hand, there are cogent reasons why it should not be thus transferred. If it was

the duty of the court to decide the question, pressure would frequently be made for an allowance of the trial of immaterial issues. Circumstances would necessarily cause the rulings to be variable. A party could not foresee what issues would be raised in respect to his witnesses. He might unexpectedly be called upon to meet many issues for which he was wholly unprepared, and without fault on his part. The testimony of his witnesses might be neutralized by testimony which he could have overcome if he had had notice that such issues were to be tried. By the rule of law, he knows that an immaterial issue will not be raised for the purpose of testing the credibility of his witnesses. The opposing party may impeach his witnesses by evidence concerning their general reputation for truth, but this is a definite matter of which the rule of law gives him notice, and which he can prepare himself to meet. Greenleaf says that "in impeaching the credit of a witness, the examination must be confined to his general reputation, and not be permitted as to particular facts; for every man is supposed to be capable of supporting the one, but it is not likely that he would be prepared to answer the other without notice." 1 Gr. Ev., s. 461.

Besides, if it is the law that a party may contradict the testimony of an opposing witness as to immaterial matters for the purpose of affecting his credibility, why should he be confined to testimony concerning general reputation for truth in attempting to impeach the witness? Why should he not be permitted to show particular instances of false statements by the witness, however immaterial the matters to which the statements relate may be? Or, at least, why should not this course be pursued with the permission of the court? No sufficient reason can be given, and the logical effect of a decision sustaining the ruling under consideration would be to substitute for the rule relating to impeaching testimony heretofore in force, one by which a party would be allowed to show, with the permission of the court, particular instances of falsehood by a witness as to matters wholly foreign to the main issues in the case, for the purpose of impeaching him.

The authorities show that the rule laid down in *Seavy* v. *Dearborn* is still the law of the state. Applying it to this case, the verdict must be set aside because of the prejudicial character of the incompetent evidence submitted to the jury. *Cole* v. *Boardman*, 63 N. H. 580, 582.

If Moore's acts were occasioned by malice, the plaintiff would be entitled to damages for the injury, if any, to her feelings, although no injury was done to her person. The right to damages for this cause does not depend upon the extent of the physical injuries suffered by the injured party, but upon the malice of the

wrongdoer. " The material damages may be trivial, and the principal injury be to the wounded feelings from the insult, degradation, and other aggravating circumstances attending the act." *Kimball* v. *Holmes*, 60 N. H. 163, 164. The instruction requested by the defendants was properly denied.

*Verdict set aside.*

Parsons, J., did not sit: Wallace and Young, JJ., dissented: the others concurred.