Hillsborough, }
April 4, 1905. }

## VILLINEUVE v. MANCHESTER STREET RAILWAY.

A witness may be impeached by proof of his declarations out of court which are inconsistent with his testimony as to material matters; and it is not necessary to lay a foundation for such evidence by inquiring of the witness upon cross-examination whether he has made the statements of which it is proposed to offer proof.

A witness cannot be asked upon cross-examination whether he has made certain statements in writing, nor be interrogated as to supposed discrepancies between his testimony and the writing, unless the latter has been regularly introduced in evidence.

A witness who has been contradicted by proof of a written statement made out of court may be recalled by either party and examined as to any conflict between the writing and his testimony on the stand.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1904, of the superior court by *Peaslee*, J.

The plaintiff, an employee of the defendants, was injured in a head-on collision between a regular passenger car and a workmen's car at about ten minutes before seven in the evening of July 16, 1901, on a curve south of "Thompson's turnout." The plaintiff was motorman of the workmen's car and was approaching the turnout in accordance with his orders. The passenger car did not wait at the turnout, and the question as to the defendants' fault was whether the act of the employees of the passenger car in running by the turnout was the negligence of fellow-servants of the plaintiff, or the result of insufficient rules and orders.

Wilson, motorman of the passenger car, testified that he usually met the workmen's car at Thompson's turnout, and was always notified when it was out; that he received no notice on July 16, but heard a fellow-employee say, in the hearing of the car starter, that the workmen had quit work at eleven o'clock because of the heat, and that their car would not be out that night. Upon cross-examination, he refused to admit signing or giving a statement shown to him; and when asked as to the substance of the facts of the alleged statement, he testified that he did not remember the first thing about them, nor that he had said that he did.

In the course of their defence, the defendants called a witness who identified a written statement as made to him by Wilson and signed by the latter, and the paper was then read to the jury. It contained statements as to Wilson's knowledge that the workmen's car was out, which materially conflicted with his testimony.

Immediately thereafter the defendants' counsel called Wilson as a witness and began to direct his attention to the contents of the paper, when objection was made. Upon inquiry by the court as to his object, counsel stated that he proposed to inquire which of the two statements was correct. The inquiry was excluded subject to exception, the court stating that "the proper time to ask that was some time ago," and also that counsel had "inquired of the witness fully concerning this statement, and the witness testified fully concerning it."

*Burnham, Brown, Jones & Warren*, for the plaintiff.

*Taggart, Tuttle, Burroughs & Wyman* (with whom were *Streeter & Hollis*), for the defendants.

PARSONS, C. J. The only exceptions relied upon are those arising from the refusal of the presiding justice to permit further examination of the witness Wilson, the motorman of the car which came in collision with the plaintiff's car, causing the injury. A material question at the trial was whether Wilson was notified, or knew, that the plaintiff's car was in front of his car on the single track. Wilson testified that prior to July 16 he had always been notified when the plaintiff's car was out, that he was not notified on the day of the accident, and that he overheard a fellow-employee state in the presence of the car starter that the workmen's car would not be out that night. As a part of their case, the defendants introduced a written statement purporting to have been made and signed by Wilson the day after the accident. According to this statement, Wilson saw the workmen's car go out the night of the accident and explained his conduct upon a different theory from that indicated by his testimony.

It is competent for a party to impeach the testimony of a witness by proof of his declarations out of court which are inconsistent with his testimony as to material matters. *Cooper* v. *Hopkins*, 70 N. H. 271. In this state it is not necessary to lay a foundation for such evidence by inquiring of the witness upon cross-examination whether he has made the declarations of which it is proposed to offer proof. *Titus* v. *Ash*, 24 N. H. 319, 322; *Cook* v. *Brown*, 34 N. H. 460, 471; *Chesley* v. *Chesley*, 37 N. H. 229, 240. The reason given elsewhere, that the witness should, by prior inquiries which call his attention to the particular circumstances and occasions, be given an opportunity to explain what was formerly said (1 Gr. Ev., s. 462), is here thought to be met by an opportunity to explain after the contradicting testimony is put in. *Titus* v. *Ash, supra.* Where the contradicting evidence

rests in parol, the witness may properly be inquired of in relation to the statements upon cross-examination. It may be that counsel who do not avail themselves of the privilege in such a case can properly be held to have waived such examination. But when the evidence proposed to be used consists of a written document, a different rule of necessity prevails. From the elementary rule that parol evidence is not competent to prove the contents of a writing, it follows that a witness cannot be asked upon cross-examination whether he has not made certain statements in writing, or be cross-examined as to any supposed discrepancies between his testimony and the writing, unless the writing has been regularly introduced in evidence. *State* v. *Cone*, 58 N. H. 151. He must first be shown the writing. Unless he admits it to be his, the document cannot then be put into the case, and no examination as to its contents can then be had. 1 Gr. Ev., ss. 463, 465.

Although the documentary evidence in this case was an unsworn statement purporting to be signed by the witness, its use is controlled by the procedure governing the use of a deposition of the witness for a like purpose. The proper practice in such case is familiar, and was discussed at length in *Haines* v. *Insurance Co.*, 52 N. H. 467. In that case counsel had been permitted to ask witnesses to read certain passages from depositions which had been given by them. It was held that "the course allowed to be taken in the cross-examination of witnesses on the stand, with reference to their depositions, was not in accordance with our approved and settled practice." It was said: "There might be a case where it would be proper, after the deposition had been read to the jury by counsel, to recall the witness and give him an opportunity to explain the whole or some part of it. There might be a case where it would be proper to ask him what he meant by certain answers in the deposition; but generally it would be unnecessary, and therefore improper, to put the question in that form. All that would generally be necessary or proper would be to give him an opportunity to explain anything in his deposition that might seem to be inconsistent with his oral testimony on the stand; and the offer of such opportunity should, of course, be made in mild and brief terms, and in a civil manner." In the same opinion the case of *Kendall* v. *Brownson*, 47 N. H. 186, is referred to, in which at the trial the court ruled that the deposition should not be read until put in by the plaintiff, and that the contents of the deposition should not in any way be made known to the jury during the cross-examination of the witness, for the purpose of impeaching or contradicting him, or showing any inconsistency between the deposition and his testimony on the stand, or asking him to explain anything in the deposition; but that when

the plaintiff put in his rebutting evidence he might recall the witness to explain any apparent inconsistency, or to explain anything that required explanation. On a case reserved the course pursued was approved as the proper practice. *Haines* v. *Insurance Co.* reaffirmed the rule. In this case it was also said, in conclusion: " There can hardly be any occasion . . . to ask him [the witness] any question in regard to it [the deposition] until he is recalled after it has been regularly put in evidence at the proper time, which is not during his examination or cross-examination." When a witness has been contradicted by proof of his statements out of court, the witness himself is entitled to an opportunity to explain after the contradicting testimony has been put in, if such opportunity has not been previously accorded him. *Titus* v. *Ash*, 24 N. H. 319, 322. The party calling him has also the right to re-examine him in explanation of the contradiction. 1 Gr. Ev., s. 467. The opposite party has at least the right to present to the witness an opportunity for explanation, and to make it clear to the jury that the witness is either unable or unwilling to make any explanation, if such be the fact. *Haines* v. *Insurance Co.*, *supra*.

In this case, the knowledge of Wilson was material. The presentation of the written statement to the jury may have aided his recollection; and the defendants had the right to have the jury know whether the witness insisted on his failure to remember, or in the face of their evidence denied the making of the statement, or admitted its falsity or that his testimony was erroneous, or explained the discrepancy in some other way. Upon the authority of these cases and the elementary rule forbidding parol proof of written documents, it is clear that the suggestion, that the proper time to inquire of the witness Wilson with reference to the contents of the written statement was before it was regularly put in evidence, cannot be sustained. Denial of opportunity to examine the witness as to the written statement because undertaken too late was therefore, as matter of law, erroneous. When Wilson was first called, he refused to admit that he signed or gave the written statement. The contents of the paper, therefore, could not then have been properly communicated to the jury. The paper was not in fact read until identified by the defendants' witness. Although counsel may have inquired of Wilson as to the substance of the facts in the statement, and may have been improperly permitted to ask him if he had stated the facts as they were stated in the paper, it is obvious they could not have examined him as to any discrepancies between the statement evidenced by the writing and those made by him in his testimony, or called upon him for any explanation thereof. The suggestion that

counsel had "inquired of the witness fully concerning this statement, and the witness testified fully concerning it," if supported by the record, does not meet the point to which the inquiry was directed: the explanation of the apparent conflict between the two statements, which could not be called for until both were before the jury. An opportunity for inquiry upon this point was not afforded by Wilson's prior failure to remember as to the facts or the giving of the statement. No reason is perceived why justice would not have been promoted by further inquiry of the witness, or why such inquiry should not have been allowed.

*Exception sustained: verdict set aside.*

BINGHAM, J., did not sit: the others concurred.