Latasha **BROWN**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CM–241.

District of Columbia Court of Appeals.

Argued July 27, 2000.

Decided Dec. 21, 2000.

Jennifer Lanoff, Public Defender Service, with whom James Klein, Jackie Frankfurt, Jeffrey S. Berman, Public Defender Service, were on the brief for appellant.

Patricia Sulzbach, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Roy McLeese, III, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB, Associate Judge, and BELSON and KING, Senior Judges.

BELSON, Senior Judge:

Appellant Latasha Brown was found guilty in a non-jury trial of one count of simple assault.[1] Appellant argues that the trial court committed reversible error in limiting her cross-examination of a police officer who took part in the arrest and precluding redirect examination of appellant's only witness. We disagree and affirm.

## I.

On the evening of November 27, 1998, Steven Williams telephoned the police and requested assistance in picking up his children from 1641 V Street, Southeast, where their aunt, appellant Latasha Brown, resided. Williams had been issued a restraining order which barred him from any contact with the mother of his children. He asked for the help of the police to avoid any possible confrontation when picking up his children, of whom he had custody. Officers Joseph Cabillo and Arleen Marsham–West responded to assist him.

While Williams remained outside of the building in which appellant resided, the police knocked on the apartment door and identified themselves to the occupants. Appellant exited the apartment building and walked toward Williams. She was "very loud and boisterous, fussing and cursing at [Williams]." Despite several requests by the police officers to calm down, appellant continued to curse at

---

1. D.C.Code § 22–504 (1996 Repl.).

Williams and refused to go back into her apartment. Appellant swung at Officer Cabillo with a closed fist when he attempted to arrest her for disorderly conduct. He was able to avoid being struck by ducking down. Appellant's sister then jumped on Officer Cabillo's back to prevent him from handcuffing appellant. Officer Marsham–West subdued appellant's sister. Officer Cabillo was then able to handcuff appellant and arrest her.

## II.

Appellant first contends that the trial court erred in limiting the cross-examination of Officer Cabillo regarding whether he complied with proper police procedure after an assault on a police officer. Appellant wished to explore three matters: (1) the extent of paperwork that Officer Cabillo completed following the incident; (2) whether the officer interviewed any witnesses after the arrest; (3) and the officer's familiarity with Metropolitan Police Department General Order 701.3 ("MPD General Orders") regarding police procedures for handling assaults on police officers. According to defense counsel, the purpose of such questioning was to establish bias (a matter not raised on appeal) and to call into question the credibility of the arresting officer. Before this court, appellant asserts that Officer Cabillo failed "to locate and take statements from all witnesses to an assault on a police officer" as required by the general order and this failure reflected on the officer's credibility and was "evidence that the assault never took place."

■ An evidentiary ruling of the trial court is reviewed for abuse of discretion. This court will set aside an exercise of trial court discretion "only upon a showing of grave abuse." *Taylor v. United States*, 661 A.2d 636, 643 (D.C.1995) (quoting *Irick v. United States*, 565 A.2d 26, 39–40 (D.C. 1989)); *see Irving v. United States*, 673 A.2d 1284, 1290 (D.C.1996). Accordingly, with regard to cross-examination, "the extent of that examination is within the sound discretion of the trial court, and we will reverse only on a showing of an abuse of that discretion." *Deneal v. United States*, 551 A.2d 1312, 1315 (D.C.1988) (citations omitted); *Jones v. United States*, 516 A.2d 513, 517 (D.C.1986) (holding the extent of cross examination is within the sound discretion of the trial court). "[W]e limit our inquiry to whether the trial court's decision was fair and rational." *Taylor, supra,* 661 A.2d at 643.

■ Applying the above standard, we find no abuse of discretion in the trial court's evidentiary ruling. It is important to observe that the trial court did not preclude "an entire line of relevant cross-examination" as claimed by appellant. The trial court instructed defense counsel that he could not question Officer Cabillo "generally [about] what his understandings are of the regulations and generally what police practice is." But at the same time, the court permitted counsel to establish through Officer Cabillo that he did not interview any witnesses and advised counsel that he could question Officer Cabillo further about any paperwork he completed relative to the case, a matter he had already covered without objection. The court also permitted the same questions to be asked of Officer Marsham–West.

In *Greer v. United States*, 697 A.2d 1207, 1211 (D.C.1997), we ruled that defense counsel may permissibly adduce evidence that the police conducted an investigation in a manner that departed from standard procedures. But we did not indicate in *Greer* that such evidence must always be admitted, and declined to rule whether, in the circumstances of that case, the curtailment of cross-examination was an abuse of discretion. *Id.* at 1212. Defense counsel argued at trial that the officer's "failure to follow certain procedures ... goes to his credibility and bias as to whether or not this incident even took place." The court determined that this line of questioning was "too tangential, too remote," and was not probative as to

whether appellant actually committed the assault. This evidentiary ruling was within the discretion of the trial judge and will not be overturned. *Cf. Price v. United States,* 697 A.2d 808, 817 (D.C.1997) (ruling trial court did not abuse its discretion in rejecting defense effort to establish officer's bias and lack of credibility by showing he had failed to complete two forms required for use of confidential funds).

### III.

Appellant's second contention is that the trial court abused its discretion by precluding redirect examination of appellant's only witness, Troy Harris. After counsel for the government completed his cross-examination of Harris, he stated that he had no further questions. The trial judge then said "Thank you. You may step down ." Immediately thereafter, defense counsel said "Actually, I have a brief redirect, your honor," at which point the trial judge said "call your next witness. Step down. Call your next witness." Appellant's trial counsel did not attempt to make any proffer concerning the nature of the redirect examination he wished to conduct. Appellant asserts for the first time on appeal that redirect of Harris was necessary in order to rehabilitate his credibility by "clarifying Mr. Harris's reasons for coming to court, his motives for testifying, and the extent to which his desire to help appellant or her sister affected the substance of his testimony."

"[R]edirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding on redirect." *Dobson v. United States,* 426 A.2d 361, 365 (D.C.1981) (quoting *Singletary v. United States,* 383 A.2d 1064, 1073 (D.C.1978)); *see Hilton v. United States,* 435 A.2d 383, 389 (D.C.1981). "The reply on redirect may take the form of explanation, avoid-

ance, or qualification of the new substantive facts or impeachment matters elicited by the cross-examiner." 1 McCORMICK ON EVIDENCE § 32, at 119–20 (John W. Strong ed., 5th ed.1999) (citations omitted).

In view of the nature and purpose of redirect examination, there is no absolute right to engage in it. It cannot be used to revisit all the matters covered in the preceding cross-examination. This differentiates it from cross-examination, which can be undertaken as a matter of right concerning all the subjects covered in the preceding direct examination, as well as matters affecting credibility.[2] *See Grayton v. United States,* 745 A.2d 274, 279–281 (D.C.2000); *Jones v. United States,* 516 A.2d 513, 517 (D.C.1986); 1 McCORMICK, *supra,* § 19, at 88, § 32, at 119. On the other hand, there can be said to be a right to redirect provided counsel proposes to deal with matters which first came up in cross-examination. *See* 1 McCORMICK, *supra,* § 32, at 119. Such matters giving rise to a right to redirect cover a broad range, including factual matters not brought up on direct, *see Johnson v. United States,* 298 A.2d 516, 518 (D.C. 1972), and evidence undermining the credibility of the witness, *see Stitely v. United States,* 61 A.2d 491, 492 (D.C.1948). *See also Johnson v. Minihan,* 355 Mo. 1208, 200 S.W.2d 334 (1947) (error to exclude evidence on redirect that would have explained impeachment evidence adduced on cross examination); *Villineuve v. Manchester Street Ry.,* 73 N.H. 250, 60 A. 748, 750 (1905) (when writing inconsistent with direct testimony introduced on cross, error to deny opportunity to explain inconsistencies on redirect); 1 McCORMICK, *supra,* § 32, at 118–121.

Although the judge in this matter had the discretion to limit the redirect examination of Harris, *see Hairston v.*

---

**2.** Cross-examination is, however, "delimited by the scope of direct examination." *Hart v. United States,* 538 A.2d 1146, 1148 (D.C. 1988). "Therefore, the trial court should per-

mit cross-examination to explore matters which tend to contradict, modify, or explain testimony given on direct." *Id.*

*United States,* 497 A.2d 1097, 1103 (D.C. 1985), it would have been error to exclude all redirect unless counsel was unable to provide any basis for redirect. Therefore, it was incumbent upon counsel, when he wished to proceed with redirect to make, or attempt to make, a proffer of the testimony that was expected, explaining to the judge the basis of his request for redirect examination. *Cf. Jones, supra,* 516 A.2d at 517–18 (defendant failed to preserve claim of error because proffer insufficient for review by court). "[A]lthough confronting a judge after he has ruled may be risky business, defense counsel should have proffered the testimony he expected to elicit." *United States v. Walker,* 146 U.S.App.D.C. 95, 99, 449 F.2d 1171,1175 (1971). As we stated in *McBride v. United States,* 441 A.2d 644, 656 (D.C.1982), "[w]hen a trial court balks at admitting certain evidence, counsel normally should make an offer of proof." We went on to observe that this jurisdiction has consistently adhered to the following principle:

> A ruling of the court that a question propounded by a party to his own witness should not be answered *must be followed by an offer of the testimony expected, or by something that would clearly indicate it, if it is desired to reserve the point for review by the court.*

*Id.* (quoting *McCurley v. National Savings & Trust Co.,* 49 App.D.C. 10, 12, 258 F. 154, 156 (1919) (emphasis added)).

While failure of counsel to make a proffer may be excused if the thrust of the excluded testimony had been made apparent by what had gone before, *see id.,* in this case there was no indication of the questions defense counsel would have presented to Harris, much less the answers those questions would have produced. We cannot agree with the dissent's suggestion that it was apparent that "defense counsel would attempt to counteract the imputation of bias." (Dissent at p. 1145 & n. 4). Defense counsel could well have regarded the bias cross-examination as so routine that he would have been more interested

in examining about some other matter covered in cross-examination which might or might not have provided a proper basis for redirect. As a result of defense counsel's failure to make a proffer, the record affords no basis for evaluating whether Harris' responses to questions dealing with his motivation for testifying would have been likely to affect the trial court's finding of guilt.

We cannot conclude, however, that the defense's failure to make a proffer burdens it with the requirement of establishing plain error in order to prevail on appeal without first considering whether the trial judge's conduct demonstrated that he "was manifestly unwilling to entertain a proffer of relevant evidence, contrary to his responsibility." *McBride, supra,* 441 A.2d at 657. Having considered the trial record, we conclude that the trial judge did not exhibit such an unwillingness.

As we have stated, the first thing the trial judge said after government counsel stated he had no further questions was "Thank you. You may step down." Immediately thereafter, defense counsel said "Actually, I have a brief redirect, your honor," upon which the trial judge said "call your next witness. Step down. Call your next witness."

The trial judge's initial statement "Thank you. You may step down," was a routine and perfunctory statement that trial judges commonly make when it appears that a witness has finished his or her testimony. It cannot be taken to be, of itself, any indication that the court would not entertain a proffer regarding proposed redirect.

The trial judge's response to the defense counsel's subsequent statement that he had a brief redirect—that the witness should step down and that counsel should call his next witness—was inappropriate. The judge should have sought or at least awaited a proffer regarding redirect. But under the circumstances, we cannot agree that the judge's conduct showed that he

was manifestly unwilling to entertain a proffer. The circumstances here are to be contrasted with those in *McBride, supra,* where the court sustained an objection to a line of cross-examination and then refused counsel's request to make an offer of proof.

The trial judge did not state that he would not accept a proffer, either after Harris' cross-examination or at any other point in the trial. The record contains no indication that the trial judge had issued any general prohibition against proffers, comparable to a trial judge's announcing in advance that he would not normally permit any objection during opposing counsel's closing argument, a practice upon which we commented in *Hammill v. United States,* 498 A.2d 551, 554–55 (D.C.1985).

To the contrary, counsel had been quite spirited in advancing arguments on behalf of appellant on evidentiary matters earlier in the trial. We note in particular that when the judge and defense counsel resumed, after a lunch break, their already length colloquy on the matter of questioning the arresting police officer regarding police orders applicable to assault on police officer cases, the judge stated that the defense counsel's proposed line of "credibility and bias" examination was "too remote. It's too remote. I won't let you do it for that reason." When the defense counsel attempted to resume the argument, the judge said "Ruling against it. If you are doing it for purposes of credibility, I think it is too remote . . . not probative enough of any issue here. . . ."

Undeterred, defense counsel continued with his argument stating, "and it also goes to bias." Counsel then went on for several more sentences in an effort to persuade the judge to let him examine on the orders. The trial judge listened to counsel's further argument and did not admonish counsel for continuing his advocacy after the judge had ruled.

While the trial judge showed by his statements to both counsel his interest in moving the trial along with expedition, he never prevented a proffer by either counsel, nor did he admonish counsel for persistent efforts to argue the law. Having reviewed the entire trial record, we conclude that the trial judge did not indicate to counsel a manifest unwillingness to entertain a proffer regarding redirect.

 As defense counsel failed to preserve the issue of denial of redirect by timely proffer, we review for plain error. *Cf. McBride, supra,* 441 A.2d at 655 (because defense counsel adequately preserved issue for appeal review was for harmless error not plain error). Under the plain error standard "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976). Appellant has failed to demonstrate that degree of prejudice. While appellant asserts that "redirect was critical to the defense case," she cannot substantiate that claim. In the absence of a proffer, this court cannot evaluate how the redirect testimony of Harris might have altered the outcome.

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

My colleagues in the majority acknowledge that the trial judge erred by peremptorily declining to permit Ms. Brown's attorney to conduct a redirect examination of the sole defense witness with respect to matters raised for the first time on cross-examination. They hold, however, that the plain error standard applies, that Ms. Brown has not satisfied that standard, and that her conviction must therefore be affirmed. I cannot agree with the majority that this is an appropriate case for plain error review. Instead, I would apply conventional harmless error analysis and reverse Ms. Brown's conviction.

**I.**

In this jurisdiction, as in others, reversals for plain error are exceedingly rare.

In order to prevail upon a ground not properly preserved in the trial court, a criminal defendant must show both that the trial judge's error was "plain," *i.e.*, "obvious," and that a clear miscarriage of justice resulted. *See, e.g., United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). This is a most exacting standard, and in my experience it is almost never satisfied.[1] Therefore, as a practical matter, once we decide to invoke the plain error doctrine, the defendant's appeal is almost certainly doomed, and her dreams of reversal evaporate into the "eerie atmosphere of never-never land." *Meredith v. Fair*, 298 F.2d 696, 701 (5th Cir.1962).

There are sound reasons for our reluctance to reverse a judgment for plain error. "The purpose of requiring a specific objection is to enable the prosecution to respond to any contentions raised and to make it possible for the trial judge to correct the situation without jettisoning the trial." *Hunter v. United States*, 606 A.2d 139, 144 (D.C.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). Further,

> [l]itigants should not be permitted to keep some of their objections in their hip pockets and to disclose them only to the appellate tribunal; "[o]ne cannot take his chance on a favorable verdict, reserving a right to impeach it if it happens to go the other way." *Palmer Constr. Co. v. Patouillet*, 42 A.2d 273, 274 (D.C.1945).

*Id.* In the kind of situation for which it was designed, the plain error rule should be firmly enforced in the interest of finali-

ty and the orderly administration of justice.

We ought not to forget, however, that it is the defendant and not his or her attorney who is likely to go to prison when the plain error doctrine precludes plenary appellate consideration of what might otherwise be a meritorious defense contention. Criminal defense attorneys, like the rest of us, are mere mortals, and we should not and do not require barristerial perfection in order to preserve a point for appeal. If counsel has asserted the underlying claim at trial, the defendant is not restricted on appeal to the precise arguments made in the trial court. *See, e.g., Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997). Moreover, we have avoided applying the plain error rule in a mechanical or wooden manner, and we have relaxed the standard where an issue has arisen unexpectedly and where it would be unreasonable to expect counsel to respond with pristine accuracy to an unforeseeable denouement. *See, e.g., Salmon, supra*, 719 A.2d at 953; *Duvall v. United States*, 676 A.2d 448, 452 n. 5 (D.C.1996).

In my opinion, this appeal does not present the type of situation for which the plain error standard was designed or to which it ought to be applied. For the reasons set forth below, I would hold that Ms. Brown's claim, namely, that her counsel was denied the right to question Troy Harris on redirect examination regarding issues raised by the prosecution on cross, was adequately preserved, and that this claim ought to be evaluated on its merits.

---

1. Unless my memory fails me, I have never voted, in more than twelve and a half years on the appellate bench, to reverse a criminal conviction for plain error. *But see Coreas v. United States*, 565 A.2d 594, 600–06 (D.C. 1989) (reversing conviction for improper prosecutorial argument despite the lack of a timely objection); *cf. id.* at 606 *et seq.* (Schwelb, J., dissenting); *see also District of*

Columbia v. Wical Ltd. Partnership*, 630 A.2d 174, 182–86 (D.C.1993) (reversing judgment in civil case notwithstanding the fact that error was invited). There have been very few plain error reversals during that time. If I believed that the plain error standard applied to this appeal, I too would vote to affirm Ms. Brown's conviction.

## II.

At Ms. Brown's trial, Troy Harris was the sole witness called to testify for the defense. On direct examination, Mr. Harris testified, *inter alia*, that Officer Cabillo was acting in an arrogant and truculent manner during his contretemps with Ms. Brown and her friends, that Cabillo was the aggressor in his physical altercation with Ms. Brown, and that Ms. Brown never swung at him. The case thus boiled down to a credibility contest between Mr. Harris and the police. On cross-examination, Mr. Harris acknowledged that he was the boyfriend of Ms. Brown's sister, that he was in court to help both sisters, and that he did not want anything to happen to either of them.

As any trial lawyer knows, the norm upon completion of cross-examination of a witness is for the attorney who called the witness to proceed to redirect examination. In this case, however, that is not what happened. As soon as the prosecutor completed his cross-examination of Mr. Harris, the judge made it crystal clear—not once but several times—that he was not disposed to permit redirect examination and that Mr. Harris' stint on the witness stand was at an end. Without inquiring whether defense counsel had anything further, the judge addressed the witness:

Thank you. You may step down.

Obviously astonished, Ms. Brown's attorney responded:

Actually, I have a brief redirect.

However, it was not to be, for the judge's rejoinder, directed first to defense counsel, then to the witness, and then to counsel again, was as unambiguous as it was dismissive:

Call your next witness.

Step down.

Call your next witness.[2]

The majority holds, on this record, that Ms. Brown's attorney was required to make a proffer regarding the content of his proposed redirect examination. But by the time that any such proffer could have been made, the judge had already twice ordered Mr. Harris to step down and twice ordered counsel to call his next witness. The judge's ruling had been as emphatic as it was cryptic. Any further argument by counsel would have constituted disobedience of the judge's directives. The judge had shown no interest in the subject matter of any proposed redirect examination, and his order that Mr. Harris step down and that counsel call his next witness was unconditional. In my opinion, a fair reading of the exchange between court and counsel demonstrates a high probability that a proffer would have been futile and that it would probably have antagonized the judge, who in this case was the trier of fact.

Moreover, this was not simply a situation in which the judge had sustained or overruled an objection which counsel could have asked him to reconsider. The judge had twice *ordered* counsel to call his next witness and twice *ordered* the witness to step down. Under these circumstances, Ms. Brown's attorney might reasonably have apprehended that refusal to do what the judge had told him and his witness to do would have been trifling with the possibility of contempt.

This is not the kind of situation in which a criminal defendant should be relegated to a quixotic attempt to secure reversal on the less than friendly terrain of plain error review. The basic claim that Ms. Brown makes on appeal—namely, that her attorney was entitled to conduct a redirect examination of the sole defense witness—was preserved in the trial court. In fact, defense counsel's response to the judge's order to the witness to step down—"Actually, I have a brief redirect"—was at least

---

**2.** Although there is a period in the transcript at the conclusion of each of these commands, I believe that exclamation points would be more in keeping with the obvious fact that the speaker, a judge, was giving orders which counsel and the witness were obliged to obey.

arguably an objection in all but name.[3] Although Ms. Brown's attorney did not present at trial the precise argument that he now makes—namely, that he wished to "dispel" the bias evidence adduced by the government on cross-examination—he had very little opportunity to do so,[4] and he could have made a proffer of his proposed redirect examination only by disregarding the judge's repeated insistence that Mr. Harris step down and that counsel call his next witness. In my opinion, we cannot fairly say that Ms. Brown's attorney failed to do anything that a reasonably competent attorney would have done under the same circumstances.[5]

### III.

All members of the division evidently agree that the trial judge's refusal to permit redirect examination was erroneous. As the majority·expressly acknowledges, "there can be said to be a right to redirect provided counsel proposes to deal with matters which first came up in cross-examination." Maj. op. at 1140. Further, to quote the majority, "[t]he trial judge's response to the defense counsel's . . . statement that [counsel] had a brief redirect—that the witness should step down and that counsel should call his next witness-was inappropriate. The judge should have sought or at least awaited a proffer re-

garding redirect." *Id.* at 1141. My colleagues thus recognize that the judge erred, but they affirm because, in their view, the plain error standard applies. As previously noted, however, I disagree with the majority's identification of plain error as the proper standard of review.

The remaining question is whether, assuming that the point was properly preserved, the judge's error was prejudicial or harmless. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (articulating harmless error standard). In my view, this is rather a close call. Nevertheless, on balance, I vote to reverse Ms. Brown's conviction.

From the perspective of the trier of fact, the dispositive question in this case was: Who should be believed? If Mr. Harris was telling the truth regarding Ms. Brown's part in the affray with Officer Cabillo, then Ms. Brown was not guilty and ought to have been acquitted. Indeed, even if the judge was unsure where the truth lay but entertained a reasonable doubt regarding the police version of the encounter, he was required to find the defendant not guilty. It was thus imperative that the trier of fact make a fully informed assessment of the credibility of the sole defense witness, Troy Harris.

---

**3.** If counsel had said: "Objection, I have a brief redirect," then application of the plain error standard would surely be implausible. I do not believe that counsel's failure to use the word "objection" should change the result when the import of his words was to object to the judge's directive.

**4.** Moreover, given the content of the prosecutor's cross-examination of Mr. Harris, it could reasonably be anticipated that defense counsel would attempt to counteract the imputation of bias. We have held that where the proposed line of questioning on redirect examination is apparent, no proffer is required. *See McBride v. United States,* 441 A.2d 644, 656–57 (D.C.1982).

**5.** None of the cases cited by the majority requiring counsel to make a proffer involved circumstances comparable to those presented here. In *McBride, supra* note 3, for example,

we stated that a proffer of a witness' expected testimony is ordinarily required where the trial judge has sustained an objection to a particular question or line of inquiry. 441 A.2d at 656. That situation differs materially from the one presented here, for in this case the judge precluded counsel from asking *any* question on redirect examination. Moreover, a proffer by defense counsel in *McBride* would not have constituted disobedience of the judge's directives; the witness had not been told to "step down" and counsel had not been ordered to call his next witness. Even so, we recognized in *McBride* that "[t]he courts . . . have not enforced the proffer requirement in a rigid fashion," *id.,* and we rejected the government's claim that the plain error standard should be applied. *Id.* at 655. *McBride* therefore provides scant support for the government's position.

But the judge could not make such an informed assessment on the truncated record before him. On cross-examination, the prosecutor had sought to depict Mr. Harris as a biased witness—as a partisan who wanted Ms. Brown to win and who would therefore be willing to lie in order to save her. In response, the defense was entitled to attempt to show, on redirect examination, that regardless of his friendship with Ms. Brown and her sister, Mr. Harris was a man who told the truth. The determination whether Mr. Harris was credible could well turn on his demeanor on redirect examination when confronting the imputation of partisanship, bias and, implicitly, mendacity. The judge's assessment of

Mr. Harris' truthfulness could not be a fully informed one until Ms. Brown's counsel had an opportunity to question the witness on the matters raised on cross. As the record stood when the judge found Ms. Brown guilty, the prosecution had been permitted to interrogate Mr. Harris on issues relating to his bias, but the defense had not.

Redirect examination can make a great deal of difference. One of Professor Wigmore's colorful illustrations tells the tale.[6] If we were to apply Judge Irving Goldberg's tongue-in-cheek test for harmless error,[7] Ms. Brown would win in a cakewalk, for the error was not minuscule and the proof of guilt was hardly gargan-

6. Maurice Healy, Esq., *The Old Munster Circuit* 72 (1939): Only one art is more difficult [than cross-examination]; that is, the art of re-examination. Herein the object of the advocate is to overcome the effect of a destructive cross-examination. This object is attained by a miracle; if you can't perform them, you had much better allow your witness to go out of the box without further question. I once heard Sir Edward Carson perform that miracle in this country, shortly after the war. His client had been grievously defamed; the defendants had justified, and in furtherance of their defense endeavoured to shew that he was something of an adventurer, living entirely upon his wife's fortune. Carson's case was that there is every difference in the world between the man who exploits his rich wife and the man who, having married a rich wife, allows her to help him. The plaintiff had been handled very severely; his wife was asked on the threshold of the cross-examination: "When did your husband last do a day's work?" and she had to answer that she didn't know. Then began a terrific bombardment. "Your husband is wearing a very handsome astrachan coat; where did he get it?" "I gave it to him." "Who paid for the *Rolls Royce* you arrived in this morning?" "I did." "How much money did he put towards the purchase of your mansion in the country?" "Nothing." And so on, through a minute examination of all the daily expenses of the married couple. Cross-examining counsel sat down with a very satisfied expression. Carson slowly lifted up his long, lean body, smoothed his silk gown, turned his melancholy face towards the lady, and said: "Mrs. X." He paused a moment to let the musical voice obtain its effect. Then in a sad, weary tone, as though the whole matter were very painful to him, "Mrs. X," he asked, "were you in love with your husband?" In the circumstances, no answer but one was possible, and therein lay the skill of the advocate. "I was," she replied, faintly. Carson looked at the jury for a moment; then lifting his eyes towards her he asked gently: "Is there any one of these things about which my friend has asked you which you regret?" Once again, only one answer was possible. "No," she replied. Carson paused for a moment, he appeared to be thinking. "Mrs. X," he said, "if the opportunity arose again today, would you be proud and happy to do it all again?" "I would," she cried, lifted by her advocate to enthusiasm. "Thank-ye, Mrs. X," said Carson, and sat down. The jury gave his client £5000, and it was those three questions that won the verdict.

6 John H. Wigmore, Wigmore on Evidence § 1896, at 739–40 (Chadbourn rev. ed.1976). It may be a "miracle" such as Sir Edward Carson's would not have been forthcoming in this case, but able counsel for Ms. Brown might well have been able to use redirect examination to show that there was a reasonable doubt of his client's guilt.

7. The infusion of "harmlessness" into error must be the exception, and the doctrine must be sparingly employed. A minuscule error must coalesce with gargantuan guilt, even where the accused displays an imagination of Pantagruelian dimensions. *Chapman v. United States*, 547 F.2d 1240, 1250 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977); *see also Clark v. United States*, 593 A.2d 186, 192–93 n. 8 (D.C.1991) (quoting *Chapman*).

tuan. Invoking, instead, the more conventional standard enunciated in *Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239, I cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." I would therefore reverse Ms. Brown's conviction.