Henry B. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 6352.

District of Columbia Court of Appeals.

Argued July 17, 1972.

Decided Dec. 28, 1972.

Roger C. Simmons, Washington, D. C., appointed by this court, with whom Harold F. Baker, Washington, D. C., was on the brief, for appellant.

Lawrence T. Bennett, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Lawrence P. Lataif, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This is an appeal from a conviction for assaulting a correctional officer.[1] Appellant was found guilty by a jury and sentenced to a prison term of three to nine years to run consecutively with any other sentence being served. This sentence, in excess of the normal maximum of five years, was imposed on the basis of an

information filed by the Government[2] stating that the defendant had two previous felony convictions.[3]

At the time of the alleged assault appellant, an inmate at Lorton, was at the District of Columbia Jail awaiting a medical examination. During the course of a meal, appellant and others were urged several times by a guard, Officer Joy, to hurry and finish eating so that another group of prisoners might be fed. Conflicting testimony was received at trial as to what happened at that point of time, appellant and others testifying that Joy seized him around the neck and dragged him from his chair, and Joy testifying that he initiated no physical contact. There was no disagreement, however, about the fact that appellant then struck Joy with his fist. In his own words, he "fired on him," but justified his action on the ground that he was merely defending himself against an unprovoked attack.

One of appellant's contentions in this court is that the trial court erred in allowing Officer Joy to testify about events occurring after the assault, while he was prevented from testifying about a beating he assertedly received from other guards in Joy's presence immediately thereafter. Appellant argues that the testimony he was prepared to give was essential to impeach Joy's credibility—the latter being the sole Government witness—and he was thereby deprived of his right to confront his accuser. An examination of Joy's testimony reveals that this contention is groundless.

On direct examination, Joy's only reference to events occurring after his physical encounter with the prisoner was that two other guards came to his aid and that he was treated in a hospital for his injuries. He was also permitted to show the jury where he had been struck. It is unnecessary for us to decide whether this evidence was admissible. No objection was

1. D.C.Code 1967, § 22–505(a) (Supp. V, 1972).

2. D.C.Code 1967, § 23–111(a)(1) (Supp. V, 1972).

3. D.C.Code 1967, § 22–104a(a) (Supp. V, 1972).

raised, thus depriving the trial judge of any opportunity to correct the error, if error it was. Hill v. United States, D.C.App., 280 A.2d 925 (1971). Moreover, under D.C. Code 1967, § 11–721(e) (Supp. V, 1972), this court is directed to render judgment on appeal without regard to errors not affecting the substantial rights of the parties. In our opinion, the action of the trial court in this respect does not fall into this category.

■ On cross-examination, Joy was asked whether he had conversed with appellant after the assault. He answered that he had said nothing to appellant, but that appellant had said something to him. Defense counsel did not pursue this line of questioning. On re-direct, Joy was asked what it was that appellant had said to him. After defense counsel's objection was overruled, he was permitted to testify that as appellant was leaving the dining room he said, "I told you, sucker", to Joy. Appellant argues that this post-assault statement was irrelevant and highly prejudicial. No doubt it was damaging, but the subject was raised for the first time by appellant on cross-examination and the Government had a right to elicit explanatory testimony from Joy on re-direct. Copes v. United States, 120 U.S.App.D.C. 234, 345 F.2d 723 (1964); Nunan v. Timberlake, 66 App.D.C. 150, 85 F.2d 407 (1936); Stitely v. United States, D.C.Mun.App., 61 A.2d 491 (1948).

■■ The only other testimony by Joy about post-assault happenings—a denial that appellant was beaten in his presence—was also elicited on cross-examination. It was this testimony that appellant sought to contradict by giving his own version of what happened after the assault, thereby presumably discrediting Joy's version of the assault, as well. But the rule is well settled that "the inquiring party is concluded by the witness' answer when cross-examination relates to a matter collateral to the issues, and he may not later rebut it for purposes of impeachment." (Footnote omitted.) Ewing v. United States, 77 U.S.App. D.C. 14, 21, 135 F.2d 633, 640 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). *See also* United States v. Kinnard, D.C.Cir., 465 F.2d 566 (1972); Tinker v. United States, 135 U.S.App.D.C. 125, 417 F.2d 542, cert. denied, 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969); Lee v. United States, 125 U.S.App.D.C. 126, 368 F.2d 834 (1966). Any evidence concerning how appellant was treated by other officers subsequent to the affray, would have been utterly irrelevant to the question of whether or not he assaulted Joy. Hence the matter was collateral and was properly excluded. Fountaine v. Washington R. & E. Co., 42 App.D.C. 295 (1914).

■ Appellant also assigns as error the court's refusal to declare a mistrial because of the prosecuting attorney's allegedly erroneous statement in his summation that the crime charged was "[basically] . . . no different from regular assault." Appellant argues that the statute contemplates a "level of conduct measurably different from 'simple assault' . . .". We do not agree. In Beausoliel v. United States, 71 App.D.C. 111, 114, 107 F.2d 292, 295 (1939), a case cited by appellant, it was said that the assault contemplated by what is now D.C.Code 1967, § 22–504,[4] is common law assault, and that other statutes, including the predecessor of § 22–505,[5] also fall within such concept.

The predecessor statute, moreover, did not use the word "assault", but spoke in terms of "personal violence." By substituting the word "assault" for "personal violence" in § 22–505, Congress obviously intended that word to have the same meaning it has in § 22–504. It seems equally clear that the greater penalty provided under § 22–505 is merely a recognition by Congress of the more serious consequences of assault on the kinds of persons mentioned in the statute, *viz.*, policemen, correctional officers, juvenile court officials, and firemen.

4. Then codified as D.C.Code 1929, § 6–29.

5. D.C.Code 1929, § 6–30.

We are not dissuaded from this view by the fact that § 22–505 also imposes a penalty on one who "resists, opposes, impedes,.intimidates or interferes" with a member of one of the classes protected. These acts are stated in the disjunctive, and a finding that a defendant committed any one of them would support a finding of guilt under the statute. Therefore these words add nothing to the meaning of the word "assault."

Appellant's main contention relates to the adequacy of the hearing held by the court to determine the reason for the Government's failure to produce certain material requested by defense counsel pursuant to the Jencks Act,[6] *viz.*, a disciplinary report written by Joy after the incident in the dining room. The existence of such document was unknown to counsel on either side until after the guard had testified. When defense counsel learned of it he requested that it be produced. The court granted this request and recessed the trial to await production.

The court was subsequently informed that the report was missing and a hearing was held, out of the presence of the jury, to ascertain the reason. The only witness was Officer Joy. He testified that he had called Lorton to have appellant's file sent to him, but when such file was delivered the report was not found among the papers in the folder. He said that upon discovering its absence, he spoke to the officer who delivered the file and was told that the report had been inside such folder only half an hour before it was taken from Lorton, but during such interval all these papers had been left unattended in an office to which prisoners had access. The witness could offer no other explanation for the disappearance of the report and the circumstances of its loss remain a mystery.

On the basis of this testimony the court ruled that the Government had met its burden of showing a "good faith" loss and denied defense motions to strike Joy's testimony and for a mistrial—the sanctions provided by the Jencks Act.

■ Appellant contends that this hearing was wholly inadequate to allow an intelligent determination of the issue of good faith, and we agree. The only testimony offered was that of a man who had not seen the report for some four months. All he could offer on the circumstances of the report's loss was an explanation derived from hearsay statements that did little or nothing to clear up the mystery. In our opinion, the persons who had had custody of the file just prior to and subsequent to the disappearance of the document should have been called to the stand. Surely they could have shed more light on the matter than Joy was able to do. At the very least they could have testified as to the procedures used at Lorton for preserving and transmitting such reports, and whether those procedures were followed in this instance. They could also have testified as to what steps, if any, were taken to retrieve the report once its loss was discovered.

Under the circumstances the only alternative seems to be to remand the case for the purpose of holding a new hearing on the loss of the report.[7] If the report is still unavailable, the court will have to hear the testimony of all those who had custody of it during the crucial period.

In the event the report is found before such hearing, and the court determines that the defense should have access to it under the provisions of 18 U.S.C. § 3500(b), there may have to be a new trial.[8] If it is still missing the court will have to make a new finding on the issue of good faith loss.

6. 18 U.S.C. § 3500 (1964).

7. *See* United States v. Bryant, 142 U.S. App.D.C. 132, 439 F.2d 642, aff'd after remand 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971).

8. *See* United States v. Consolidated Laundries Corp., 291 F.2d 563 (2d Cir. 1961).

If the court finds that the report's disappearance was a result of bad faith or gross negligence upon the part of the Government, it must impose the sanctions provided by the Jencks Act. *See* United States v. Bryant, *supra*, n. 7. But if the court finds otherwise the conviction may stand, subject, of course, to further review by this court.

In any event, appellant's objection [9] with respect to the length of the sentence imposed on him is valid. The augmented sentence given him pursuant to § 22–104a(a), was based on an information asserting two prior felony convictions. It now appears that one of these convictions occurred more than a month after the assault in the instant case. The statute is unambiguous in its requirement that the convictions relied on must have occurred before the commission of the felony for which the augmented sentence is imposed. Accordingly, in the event the conviction is allowed to stand after the remand hearing, that part of the sentence imposing a term of imprisonment in excess of five years shall be vacated and appellant resentenced.[10]

Remand for proceedings consistent with this opinion.

9. This point was raised only in appellant's reply brief, filed on the day of oral argument. The Government concedes that on this issue, appellant is correct.

10. In light of this disposition, it is unnecessary for us to consider appellant's contention that convictions prior to the passage of § 22–104a cannot be deemed the basis for recidivist sentencing under this subsection.