UNITED STATES of America, Appellee,

v.

**Robert D. BLACK, Appellant.**

No. 81–5244.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1982.

Decided Sept. 28, 1982.

Rehearing Denied Dec. 8, 1982.

David J. Fudella, Alexandria, Va. (John D. Grad, Hirschkop & Grad, P.C., Alexandria, Va., on brief), for appellant.

William G. Otis, Sp. Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Rosemary E. Glynn, Sp. Asst. U.S. Atty., Washington, D. C., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

1. Black denied this allegation.

2. The rule provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

HARRISON L. WINTER, Chief Judge:

Robert D. Black, an inmate of the Lorton Reformatory, appeals his conviction for assaulting and impeding a correctional officer with a deadly weapon. Assigned as grounds for reversal are (1) the admission of certain evidence which defendant contends was irrelevant and unduly prejudicial, and (2) the jury instruction on the issue of self-defense. Finding that the self-defense instruction was indeed erroneous, we reverse and remand for a new trial.

I.

Black was charged in a single-count indictment under 22 D.C.Code § 505(b) (1981) for using "a dangerous and deadly weapon, that is, a knife" in "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with" a correctional officer engaged in the performance of official duties. The incident in question took place in a cell block at Lorton when Black refused Officer Alvin Henry's order that he return to his cell. It is undisputed that Black threatened Henry with a homemade knife, backed Henry off, and finally returned to his cell. Black testified that he drew his weapon only after Henry swung at him with a putty knife. Officer Henry denied that he wielded a putty knife or any other weapon.

II.

At trial, the court admitted Officer Henry's testimony that Black, after returning to his cell, threw human feces at Henry.[1] Defense counsel objected to the introduction of this evidence as irrelevant and unduly prejudicial. The district court, however, ruled the evidence relevant and admissible as "part of the overall scheme of" the crime.

The parties treat the admissibility of this evidence as being governed by Federal Evidence Rule 404(b).[2] Black argues that the

order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

testimony constituted evidence of "other crimes" which should have been excluded. The government counters that the incident followed so closely on the armed confrontation that evidence of the subsequent act was admissible on a "res gestae" theory as an exception to Rule 404(b).

We need not choose between these opposing positions, for the fact is that Black was charged with "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with" Henry in the performance of Henry's official duties *and* with using a knife in so doing. The statute under which Black was charged does not treat use of a deadly weapon as a separate violation but instead as a factor which aggravates the offense of assaulting or interfering with a public officer.[3]

■ According to Henry, Black threw excrement in an effort to drive Henry away from Black's cell and thereby gain an opportunity to hide the knife. Such conduct, if it occurred, was not merely part of the context of the crime; it was part of the crime itself—a continuing course of interference with Henry's execution of his duties.[4] Thus, Henry's testimony in this regard introduced no "other act," but rather dealt directly with an ultimate issue of fact. Viewed in this way, Henry's testimony is obviously relevant and falls outside the scope of Rule 404(b).

■ Having determined that Rule 404(b) does not mandate exclusion of Henry's testimony, we affirm the district court's decision to admit the evidence under Rule 403.[5] Black argues that evidence that he threw human feces at Henry was so inflammatory that it should have been excluded even if it was relevant. Under Rule 403, however, relevant evidence is excludible only if its prejudicial effect *substantially* outweighs its probative value. The balance is for the trial court to strike, and its decision to admit evidence over a Rule 403 objection will be reversed only if it constitutes an abuse of discretion. *See United States v. Tibbetts,* 565 F.2d 867, 868–69 (4 Cir. 1977).

■ As noted above, the testimony in question went directly to an ultimate issue of fact. Hence, the probative value of the evidence was high. No doubt, its prejudicial impact was also great. In our view, however, the balance was not so uneven

---

3. The Code provides:

(a) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia, or any officer or member of any fire department operating in the District of Columbia, or any officer or employee of any penal or correctional institution of the District of Columbia, or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere, while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than 5 years or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

(b) Whoever in the commission of any such acts uses a deadly or dangerous weapon shall be imprisoned not more than 10 years. 22 D.C.Code § 505 (1981).

The indictment in this case cited only subsection (b), but it tracked the language of subsection (a). Moreover, a violation of subsection (a) is inherent in any violation of subsection (b). *See Petway v. United States,* 420 A.2d 1211, 1213 (D.C.Ct.App.1980). Thus, the indictment gave Black fair notice that the government would not confine its evidence to Black's use of a deadly weapon, but instead would seek to prove all aspects of his interference with Officer Henry.

4. While asserting a "res gestae" exception to Rule 404(b), the government made the alternative argument, both on appeal and in the district court, that Black's throwing waste "was part of impeding an officer."

5. The rule states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

that admission of Henry's testimony can be deemed an abuse of discretion.

### III.

At the close of the evidence, Black requested an instruction on self-defense.[6] Under the requested instruction, the jury would have been required to acquit if it found that the corrections officer employed excessive force and Black responded with an amount of force he reasonably deemed necessary to avoid bodily harm to himself. The court, however, rejected the suggested instruction. It gave instead a charge to the

effect that Black was entitled to defend himself with "deadly force" if he reasonably believed that such force was necessary to escape imminent death or serious bodily harm.[7] Black argues that the self-defense instruction was erroneous in two respects. First, he contends that the instruction misled the jury by framing the issue in terms of an accused's right vel non to use deadly force, whereas the evidence showed merely a threat to use force. Second, he argues that the instruction conditioned the right of self-defense on the presence of an imminent threat of death or serious bodily harm, whereas the law actually provides that one

**6.** Section 505 punishes only conduct undertaken "without justifiable and excusable cause." 22 D.C.Code § 505(a) (1981). Self-defense is not a good defense in every circumstance, for the statute expressly provides: "It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he has reason to believe is a law enforcement officer, whether or not such arrest is lawful." *Id.* In general, however, the statute incorporates the common law of assault, *see Johnson v. United States,* 298 A.2d 516, 518 (D.C.Ct.App.1972), and the government does not dispute that self-defense is a valid issue in this case.

**7.** The instruction, taken verbatim from E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* §§ 14.19 to –.21 (3d ed. 1977), was as follows:

If the Defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself. By "deadly" force is meant force which is likely to cause death or serious bodily harm.

In order for the Defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated the reasonable belief that the other person was then about to kill him or to do him serious bodily harm. In addition, the Defendant must have actually believed that he was in imminent danger of death or serious bodily harm and that deadly force must be used to repell [*sic*] it.

If evidence of self-defense is present, the Government must prove beyond a reasonable doubt that the Defendant did not act in self-defense. If you find that the Government has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the Defendant not-guilty. In other words, if you have a reasonable doubt whether or not the Defendant acted in self-defense, your verdict must be not-guilty.

If the Defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repell [*sic*] such danger, he would be justified in using deadly force in self-defense, even though it may afterwards have turned out that the appearances were false. If these requirements are met, he could use deadly force even though there was, in fact, neither purpose on the part of the other person to kill him or to do him serious bodily harm, nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense.

If the Defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repell [*sic*] such danger, he was not required to retreat or to consider whether he could safely retreat. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

However, if the Defendant could have safely retreated but did not do so, his failure to retreat is a circumstance which you may consider, together with all other circumstances, in determining whether he went farther in repelling the danger, real or apparent, than he was justified in doing under the circumstances.

may repel a lesser threat with reasonable force.

We agree that the instruction given by the district court was designed for cases of deadly assault and was thus inappropriate in a case involving no more than a threat to use force.[8] There was no testimony that Black attempted to kill Officer Henry. All of the witnesses agreed that Black merely brandished the knife and threatened to use it. Hence the district court's repeated references to "deadly force" erroneously strayed from the evidence. That error, however, may have been harmless. Precisely because the evidence was so clear that Black only threatened deadly force and did not actually resort to it, a rational juror would not likely have been misled by the court's inapposite words. *See generally United States v. Nyman,* 649 F.2d 208, 211–12 (4 Cir. 1980).

Black's second argument is more compelling. The court several times repeated that Black's self-defense theory was justified only if he faced "imminent danger of death or serious bodily harm." Had Black attempted to kill Officer Henry, this instruction would have been correct. But the instruction implied that the lesser force which defendant actually employed could not justifiably have been directed at a threat less grave than death or serious injury. In this respect, the instruction misstated the law. Under the traditional rule, the quantum of force which one may use in self-defense is proportional to the threat which he reasonably apprehends. Professors LaFave and Scott have aptly summarized the governing principle:

> In determining how much force one may use in self-defense, the law recognizes that the amount of force which he may justifiably use must be reasonably related to the threatened harm which he seeks to avoid. One may justifiably use *nondeadly* force against another in self-defense if he reasonably believes that the

other is about to inflict unlawful bodily harm (*it need not be death or serious bodily harm*) upon him (and also believes that it is necessary to use such force to prevent it). That is, under such circumstances he is not guilty of assault (if he merely threatens to use the nondeadly force or if he aims that force at the other but misses) or battery (if he injures the other by use of that force). He may justifiably use *deadly* force against the other in self-defense, however, only if he reasonably believes that the other is about to inflict unlawful death or serious bodily harm upon him (and also that it is necessary to use deadly force to prevent it).

W. LaFave & A. Scott, *Handbook on Criminal Law* 392–93 (1972) (footnotes omitted, emphasis partly in original). *See Harris v. United States,* 364 F.2d 701, 702 (D.C.Cir. 1966) ("One who is attacked may repel the attack with whatever force he reasonably believes is necessary under the circumstances . . . ."). *See generally Brown v. United States,* 256 U.S. 335, 344, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921). Under this notion of proportionality, a danger which is not so great as to justify an actual killing in self-defense may nevertheless be serious enough to justify an unexecuted threat to use deadly force. *See* W. LaFave & A. Scott, *supra,* at 392 & n.13.

We assume, of course, that the jury followed the instruction laid down by the court. On the basis of the conflicting testimony presented at trial, the jury may have believed that Officer Henry struck Black with a putty knife and that Black reasonably feared bodily injury. Under a proper instruction, they might have concluded that Black's threat to use a knife was reasonably proportioned to the danger posed by Henry. The instruction given, however, foreclosed that conclusion. It permitted acquittal only if Black reasonably feared death or serious bodily harm.

---

**8.** Significantly, the chapter of the form book from which the instruction was taken is enti-

tled "Murder." E. Devitt & C. Blackmar, *supra* note 7, at 211.

■ Plainly, the court's instruction inadequately conveyed the law of self-defense.[9] This error could be deemed harmless only if Black's threat constituted excessive force as a matter of law, in which case he was entitled to no self-defense instruction at all. Cf. *United States v. Johnson*, 542 F.2d 230, 232–33 (5 Cir. 1976) (the invalidity of a seizure under the fourth amendment can never, without more, justify resistance by means of a threat of deadly force). But the district court correctly determined that self-defense was a question for the jury; the government does not dispute this view, which is fully supported by the record. Black was therefore entitled to an instruction correctly informing the jury of the law of self-defense. Because the instruction provided was erroneous, Black's conviction cannot stand.

REVERSED; NEW TRIAL GRANTED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

I would affirm. Agreeing with the majority on all other points, I would hold harmless the error in the charge upon which it reverses this conviction. Rule 52(a), Fed. R.Crim.P.

There was of course technical error in this charge in the respects correctly identified by the majority opinion. I concede that we must be particularly careful in holding harmless any error made in defining to the jury the substantive elements of a crime or a defense when that error has any logical potential for misleading the jury to the defendant's prejudice. And I have no quarrel with the court's painstaking mode of analysis. There is no way to assess harmlessness of errors in jury instructions except by assessing their misleading potential in relation to the total context in which they were made and the specific evidence in

the case. Ultimately then the estimate of harmlessness or prejudice comes to a judgment call. I accept that the guiding principle for making that judgment call with respect to this non-constitutional error should be whether we believe it "highly probable that the error did not affect the judgment." R. Traynor, *The Riddle of Harmless Error* 34–35 (1976). Because I do believe it highly probable that this error did not have that effect here, I simply disagree with the majority on its final judgment call.

Just as the majority concludes that the court's erroneous, repeated references to defendant's use of "deadly force" was, in total context, harmless because there was no evidence from which actual use of force rather than mere threat of force could be found, so would I find harmless the trial court's repeated statements that defendant's conduct could only be found justified if he reasonably feared "imminent death or serious bodily harm." The majority concludes that these references foreclosed any finding by the jury that though defendant could not reasonably have feared death or "serious bodily harm" justifying his retaliatory action, he could reasonably have feared mere "bodily injury" that did. Slip op. 318.

While there is a certain logic about this in the abstract, I do not believe it could possibly have operated in this way on the evidence in the case. Defendant's factual theory of defense was a narrow, simple one— that the correctional officer had actually struck at him with a putty knife and was prepared to do so again. This fact was simply denied by the officer. Only if, preliminarily, the jury accepted this fact—or more properly, given the cast of the proof burden, failed to find beyond a reasonable doubt that it did not occur as specifically asserted—could defendant have prevailed

---

**9.** The government suggests that defendant objected to the instruction with specificity only after the jury retired and that Rule 30, Fed.R. Crim.P., therefore forecloses review. The record shows that, before the jury withdrew, defense counsel offered an instruction embodying the correct law and objected to the court's instruction as varying therefrom. After the

court delivered its instructions, defense counsel sought to elaborate on the grounds of his objection but was admonished by the court to wait until the jury left the room. When the jury retired, counsel approached the bench and made the arguments which have been pressed on appeal. Under the circumstances, the objection was sufficiently preserved for appeal.

on the basis of his affirmative defense. Beyond this, under a correct apprehension of the law, the jury must also have accepted—or not found disproved beyond a reasonable doubt—that the retaliatory conduct charged to defendant, including his failure to retreat, was reasonably proportional to the officer's aggression—found or assumed.

On the evidence in this case it is not only highly improbable, it is inconceivable to me that a jury which accepted—or was in reasonable doubt so that it must assume—the predicate fact of aggression, striking at defendant with a metal knife, would not also have considered the bodily harm threatened by it "serious." It is therefore inconceivable to me that the jury's rejection of this defense reflected anything other than a rejection of its narrow factual predicate—on which the evidence was flatly contradictory.

As to the existence of that predicate fact there was of course nothing misleading in the charge. The burden of proof to disprove its occurrence was properly placed upon the state under the proper standard. The charge in its totality—though technically erroneous because of its improvident borrowing from the homicidal self-defense section of the form book—sufficiently conveyed, on the evidence in this case, the critical legal principle: that to constitute justifying self-defense, retaliatory action must (1) be based upon a reasonably feared threat of harm and (2) be reasonably proportional to the threat as perceived. Because the original aggressive act specifically relied upon here so obviously threatened "serious" harm if it threatened any, the technical failure of the court to suggest that though the reasonably perceived threat might not be of "serious" harm it might nevertheless have justified defendant's retaliatory act here seems to me harmless under the proper test. Obviously so to hold would not condone the giving of such a technically erroneous charge in any but the quite specific situation under review here.

Freed of any concern for a broader precedential effect, or that any general license to use the homicidal self-defense charge in this non-homicidal setting was being given, I would affirm the conviction.