UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CHARLES SIMMS,
Plaintiff-Appellant,

v.

DONALD JACKSON; MICHAEL
BARKSDALE; REGINALD GANT,

No. 95-7062

Defendants-Appellees,

and

SEWALL SMITH; WILLIAM PHILBERT;
THEODORE PURNELL,
Defendants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-94-1794-HAR)

Argued: May 10, 1996

Decided: June 27, 1996

Before MICHAEL, Circuit Judge, NORTON, United States
District Judge for the District of South Carolina, sitting
by designation, and DOUMAR, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

ARGUED: Thomas Christopher Dame, GALLAGHER, EVELIUS &
JONES, Baltimore, Maryland, for Appellant. Regina Hollins Lewis,

Assistant Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General, Carmen M. Shepard, Assistant Attorney General, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

This matter is before the Court on appeal from the district court's judgment in defendants' favor after a bench trial. We find no error in the district court's decision and therefore we affirm.

I.

Plaintiff Charles E. Simms is an inmate at the Maryland Penitentiary, a maximum security institution. On November 11, 1993, plaintiff was involved in an altercation with a prison guard while two other guards were present. All three guards then restrained and subdued the plaintiff, who was taken to the hospital for treatment from injuries resulting from the incident. Plaintiff subsequently filed suit on June 28, 1994, pro se in the District of Maryland seeking damages for battery, cruel and unusual punishment under the Eighth Amendment, and a similar claim under the state constitution. Counsel was appointed to represent plaintiff in March of 1995. On June 7, 1995, the parties stipulated to the dismissal of three defendants, Sewall Smith, William Philbert, and Theodore Purnell. A two-day bench trial against Lieutenant Donald Jackson, Corporal Michael Barksdale and Sergeant Reginald Gant commenced on June 8, 1994, before Senior United States District Judge John R. Hargrove.

2

According to the defendants,[1] the three officers were assigned on November 11, 1993, to search for escape paraphernalia in the B Block area of the penitentiary. After lunch, all three entered plaintiff's cell, and Lieutenant Jackson discovered a laundry bag containing a large amount of various medications. At this point the plaintiff was standing at the cell door, and Lieutenant Jackson told him that he could give plaintiff a ticket for hoarding medication. Each defendant testified that plaintiff responded by saying, "Fuck you, you black bitch, and the ticket, too." Plaintiff moved into the cell, and Lieutenant Jackson responded by ordering plaintiff out of the cell. Plaintiff then swung at Lieutenant Jackson and struck Jackson in the right shoulder. Lieutenant Jackson immediately and spontaneously responded by throwing a single punch at plaintiff which landed on plaintiff's face.

Subsequent to the lieutenant's strike, all three officers attempted to subdue plaintiff, who was still struggling and shouting obscenities. The officers pulled the struggling plaintiff outside of the cell and either forcefully brought him to the floor, pinning him there, or, as plaintiff claimed, plaintiff fell over a board at the base of the door and landed directly on his face. During this time plaintiff was shouting for other inmates to participate, claiming that the officers were trying to kill him. The officers then called for more security, as the area at that time was open to the prison population during a recreational period. Plaintiff was finally subdued, cuffed and taken to the hospital for treatment of injuries to his face and neck.

At trial defendants called plaintiff's treating psychologist, who testified that he diagnosed plaintiff with paranoid schizophrenia, and that it was possible that plaintiff, based on a paranoid misperception about prison guards, could overreact to a confrontation over something having been found in his cell. There was also some testimony of plaintiff having an animus towards black prison guards. Also, plaintiff's treating physician could not say to a reasonable degree of medical cer-

_____

**1** The factual account that follows is a review of the evidence in the light most favorable to the defendants, as the district court expressly found their version of events to be credible. Plaintiff concedes that this finding, based upon the extensive testimony of the defendants, the plaintiff, and the plaintiff's factual witness, is not clearly erroneous. We agree.

3

tainly whether plaintiff's injuries to his face, neck, and one eye were caused by blows to the face or neck, or were the result of a struggle in an attempt to subdue and pin the prisoner, or even a hard fall to the ground.

The district court credited the testimony of the defendants and found not credible that of the plaintiff and his factual witness. The testimony of the plaintiff and his witness differed in key respects, the witness testifying that plaintiff was in the cell on the bunk when the officers arrived, and that plaintiff was struck once in the face with a blunt object or radio, whereas plaintiff testified that when he returned to his cell the officers were there, and that he was held by two officers and struck repeatedly by the third. The district court then found that there was only a single strike by Lieutenant Jackson in response to plaintiff's blow, and that strike was not cruel and unusual punishment. The trial court specifically found that the intent element, malice, was not present. The district court analyzed all of the relevant factors under Hudson v. McMillan, 503 U.S. 1 (1992), adduced other facts which pointed against liability in the case, and ultimately found that the single blow by the officer was a natural, spontaneous response to a first blow by the prisoner and not a wanton, sadistic or malicious act. The district court also found that the efforts by all three defendants to subdue the struggling plaintiff by forcing him to the ground were not unreasonable or excessive. Moreover, the district court was not convinced that plaintiff's injuries were caused by Lieutenant Jackson's punch rather than the fall to the concrete. Plaintiff now appeals the finding that the single blow by Lieutenant Jackson was not "excessive force."

II.

The district court's factual findings may be overturned only if clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 572 (1985). The district court's legal conclusions, however, are subject to de novo review. Waters v. Gaston County, 57 F.3d 422, 424-25 (4th Cir. 1995).

In Hudson, the United States Supreme Court recognized that guards must often use force to keep order, and corrections officers must "balance the need to maintain or restore discipline through force

4

against the risk of injury to inmates . . . ." 503 U.S. at 6. The plaintiff bringing an excessive force claim must therefore prove both that the force used was objectively excessive, and that the defendant's actions satisfied a separate, subjective standard. The core judicial inquiry under the subjective standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Factors that may aid the inquiry of a defendant's subjective intent are the extent of the injury suffered by the inmate, the need for the application of force, the relationship between the amount of force used and the need, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response. Id. (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). It is clear that the factors laid out in Hudson should be used to determine if the subjective portion of the test, force used "maliciously and sadistically," has been met. Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). We address these factors in turn.

Plaintiff argues that the force used in this case, the spontaneous strike of plaintiff as a reaction to plaintiff's punch, was clearly not de minimis, especially given the nature of the injuries plaintiff suffered. Plaintiff also states that his injuries were extensive.**2** However, the district court found that it was unclear from the evidence from where the injuries came: the punch, which was purportedly excessive, or the ensuing effort to subdue plaintiff resulting in plaintiff landing hard on the ground, which the court found clearly necessary and not excessive. Thus plaintiff has not even proven that the allegedly unconstitu-

_____

**2** Because we find that plaintiff clearly failed to show the subjective element of his excessive force claim, we need not address whether the single strike against plaintiff, separate from the force used in the subsequent efforts to subdue him, was objectively excessive. Nor must we address whether a single "spontaneous" strike by a prison guard, whether provoked or unprovoked, constitutes punishment under the Eighth Amendment. See, e.g., Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir.) (stating that a spontaneous assault by a prison guard, though potentially cruel and hopefully unusual, does not fit any ordinary concept of "punishment" cognizable under the Eighth Amendment), cert. denied, 414 U.S. 1033 (1973). But see Pelfrey v. Chambers , 43 F.3d 1034, 1037 (6th Cir.) (stating that the district court's finding that an unprovoked attack was not punishment "ignored the power arrangements that exist within the prison environment"), cert. denied, 115 S. Ct. 2269 (1995).

5

tional force used, i.e., the single strike by Lieutenant Jackson, caused plaintiff's injuries.

Next, plaintiff argues there was no need for the amount of force used in the context of the situation, relying on our decision in King v. Blankenship, 636 F.2d 70 (4th Cir. 1980). In King, however, the inmate plaintiff verbally threatened belligerent action and the official responded by throwing the inmate to floor, ripping part of the prisoner's beard off his face, and slapping and beating him while the prisoner was on the ground. King is therefore distinguishable from the case sub judice, as there the inmate had not already used physical force against the defendant, and further, the beating was continual, initiated by the official, and not conceivably motivated by self-defense. Id. at 71.

Plaintiff here desires the Court to hold that any need for force in this case was limited to the force necessary to restrain plaintiff and move him out of the cell, which arguably would not include a punch in plaintiff's face. Although in Williams we stated that mace used against a segregated inmate is a relatively mild response and "may be much more humane than a flesh to flesh confrontation with an inmate," 77 F.3d at 763, here the prisoner initiated the "flesh to flesh" confrontation. Williams is also distinguishable from the instant case, as we ultimately held in Williams that an initial use of mace was not cruel and unusual punishment, but a subsequent eight-hour period of four-point restraints without the opportunity to clean off the mace, given that the perceived threat had admittedly dissipated, might state a claim for cruel and unusual punishment. Id.  That decision has little bearing on this case.

We find sufficient support in the record for the district court's finding that the guard's response was not shown to be unnecessary under the circumstances. It is clear that under certain circumstances even an escalation in the use of force may be necessary to prevent further violent responses from a prisoner. Though in this case there was no escalation, the district court was not clearly erroneous in finding that Lieutenant Jackson's response was not constitutionally "unnecessary" within the meaning of the Eighth Amendment.

Plaintiff next argues that defendants did not reasonably perceive plaintiff as a serious threat. Each defendant testified that as he saw

6

plaintiff enter the cell, he did not perceive plaintiff to be a threat, one stating that plaintiff's age, 52, was relevant. However, the district court expressly found that he did become an actual, as well as perceived, threat when plaintiff shouted obscenities at and struck Lieutenant Jackson. Plaintiff attempts to lessen the force of this finding by stating that plaintiff was alone surrounded by three guards. In Williams, however, we found that a perception of a threat was justified where inmates were locked in closed segregation units but were throwing foul-smelling liquids at the guards. 77 F.3d at 763. There the officers immediately responded by spraying mace at the inmates. Id. In this case there was no immovable barrier between plaintiff and the defendants, and all of plaintiff's limbs were free to cause serious harm. A threat was reasonably perceived by the defendants the moment plaintiff lashed out while moving toward and striking Lieutenant Jackson.

Finally, plaintiff argues that defendants did not make adequate efforts to temper their forceful response, since Lieutenant Jackson's first reaction was to strike plaintiff in the face. The district court however found that the officers, subsequent to the initial reaction, did temper their response by subduing plaintiff, causing no more harm than reasonably necessary under the circumstances. It is noteworthy that when plaintiff first posed a danger, after plaintiff had shouted obscenities at and moved toward Lieutenant Jackson, the lieutenant's first response was to verbally order plaintiff out of the cell. In addition, plaintiff was only struck one time and then subdued, which certainly supports the district court's conclusion that the strike by the lieutenant was not malicious but rather part of a good faith effort to subdue a violent prisoner. Looking solely at the Hudson factors, then, the district court's decision was entirely appropriate.**3**

_____

**3** We note that the factors in Hudson are not the sole factors in determining whether the subjective element has been proven in an excessive force case. See Hudson, 503 U.S. at 9; Whitley, 475 U.S. at 321. For example, in this case the district court relied in part on the lack of evidence that the defendants had any prior relationship with the plaintiff. Had the converse been true and there had been some evidence of an "animus" between the parties, such would have been helpful to the trier of fact in determining the credibility of defendant's claim that the strike by Lieutenant Jackson was wholly spontaneous and in self defense.

The district court found that the lieutenant's punch was a spontaneous reaction in self-defense. Such self-defense has important ramifications, as an officer must have the latitude to reasonably respond to an inmate's punch with one of his own, as long as the clear purpose is not retaliation but rather an attempt to protect himself or subdue the attacker. Self-defense necessarily implies a lack of malice. In a claim of self-defense in the criminal law, the force used in response to force must be reasonable in proportion to the perceived threat. See, e.g.. United States v. Oakie, 12 F.3d 1436, 1443 (8th Cir. 1993); United States v. Black, 692 F.2d 314, 318 (4th Cir. 1982) (quoting W. LaFave & A. Scott, Handbook on Criminal Law 392-93 (1972), stating that "[o]ne may justifiably use nondeadly force against another in self-defense if he reasonably believes that the other is about to inflict unlawful bodily harm (it need not be death or serious bodily harm) upon him (and also believes that it is reasonably necessary to use such force to prevent it)"). Here without question proportionality existed.**4** Having fully reviewed the district court's judgment, we find no error. The district court is therefore

AFFIRMED.

_____
**4** We obviously are not condoning a"one-free-punch" attitude among prison guards or a similar rule in excessive force cases. Rather, we are merely stating that the subjective element in the excessive force context is not subject to a bright line rule such as the one advocated by the plaintiff. Rather, the facts must be examined on a case-by-case basis primarily by the trier of fact.

8